Stephen B. Heath - 237622
Steven W. Yuen - 230768
eservice@heathandyuen.com
Mario E. Hermosillo - 330725
mhermosillo@heathandyuen.com
mspencer@heathandyuen.com
HEATH & YUEN, APC
268 Bush Street, #3006
San Francisco, CA  94104
Tel:    (415) 622-7004
Fax:    (415) 373-3957

Attorneys for Defendant
A PLACE FOR ROVER, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY COTTER,<br><br>        Plaintiff,<br><br>v.<br><br>JACQUELINE LAMBERT, AND A PLACE FOR ROVER, INC., DBA ROVER.COM, a DELAWARE CORPORATION,<br><br>        Defendants. | Case No.:<br><br>**DEFENDANT A PLACE FOR ROVER, INC.'S NOTICE OF REMOVAL** |

## I.      NOTICE OF REMOVAL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS GIVEN defendant A Place for Rover, Inc. (herein "Rover") is removing plaintiff Jeremy Cotter's (herein "plaintiff") civil complaint filed in the Superior Court of California, County of Los Angeles, case number 24STCV33232 to the United States District Court for the Central District of California.  Rover is timely filing the notice of removal within 30 days after receipt on January 9, 2025 (Exhibit A) of the December 17, 2024 filed complaint (Exhibit B) served on January 1, 2025 (Exhibit C) setting forth the claim for relief upon which such action or proceeding is based per 28 United States Code sections 1441(a) and 1446(b)(1).

///

///

## II.    GROUNDS FOR REMOVAL

"A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  (28 U.S.C. § 1446(a).)

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending."  (28 U.S.C. § 1441(a); see also *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ["Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant"].)  Accordingly, the removal statute provides two basic ways in which a state court action may be removed to federal court:  (1) the case presents a federal question, or (2) the case is between citizens of different states and the amount in controversy exceeds $75,000.  (28 U.S.C. §§ 1441(a)-(c) & 1332(a).)

Rover is removing this case to federal court based on the existence of both federal question, and diversity jurisdiction.

**A.    Federal Question Jurisdiction Exists**

**1.    Plaintiff Alleges Violation Of The Federal Americans With Disabilities Act Law**

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  (28 US.C. § 1331.)  When removal is based on federal question jurisdiction, "the court looks to the face of a well-pleaded complaint to determine whether a cause of action is created by federal law or whether the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law."  (*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).)

The federal Americans with Disabilities Act ("ADA"), codified at 42 United States Code sections 12101 et seq., prohibits discrimination against people with disabilities and creates a federal private right of action.  (42 U.S.C. § 42101.)  Federal courts hold a plaintiff—who is the master of the

complaint—who asserts claims under a federal statute creates federal question jurisdiction. (*Topka v. The SETI Inst.*, Case No. 5:13-cv-01283 EJD, *3 (N.D. Cal. Jun 18, 2013) [holding federal ADA claims create federal question jurisdiction in denying plaintiff's motion to remand], citing *Armstrong v. N. Mariana Islands*, 576 F.3d 950, 955-956 (9th Cir. 2009).)

Plaintiff's complaint's seventh cause of action partly alleges disability discrimination in violation of the ADA. (Exhibit B at 23:11-24:2 (¶¶ 69-70.) Plaintiff expressly alleges the seventh cause of action is based on "Title III of the ADA, codified at 42 U.S.C. § 12182" and "Defendant's conduct, in failing to accommodate Plaintiffs disability" caused him harm. (Exhibit B at 23:20, 25:3-4 & 23:11-13 (¶¶ 70 & 75-76).) Thus, removal is proper based on federal question jurisdiction.

## B.    Federal Diversity Jurisdiction Exists

Diversity jurisdiction exists per 28 United States Code sections 1446(c)(2). Under the diversity statute, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—[¶] (1) citizens of different States; ..." (28 U.S.C. § 1332(a).)

### 1.    Plaintiff And Rover Are Diverse

#### a.    Plaintiff Admits He Is A California Resident

Plaintiff admits he resides in Playa Vista, Los Angeles County, California. (Exhibit B at 4:7-9 (¶ 8).)

#### b.    Plaintiff Admits Rover Is A Delaware Corporation With Its Principal Place Of Business In Washington

"[A] corporation shall be deemed to be a citizen of every State ... by which it has been incorporated ...." (28 U.S.C. § 1332(c)(1).)

Plaintiff correctly admits Rover is incorporated under the laws of Delaware. (Exhibit B at 4:18-19 (¶ 10).) He further correctly admits Rover's principal place of business is located in Washington. (Id., at 4:19-20 (¶ 10).) Thus, California resident plaintiff, and Delaware resident Rover are completely diverse.

///

///

**c.    Plaintiff Does Not Know Defendant Jacqueline Lambert's Residence**

Plaintiff does not know defendant Jacqueline's current address.  (Exhibit D at 4:11-13 (¶ 9).)

**2.    The Amount in Controversy Exceeds $75,000**

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal."  (*Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014), citing 28 U.S.C. § 1446(a).) "When removal is based on diversity of citizenship, an amount-in-controversy requirement must be met. Ordinarily, 'the matter in controversy [must] excee[d] the sum or value of $75,000.'"  (*Id.*, at 83-84, citing 28 U.S.C. § 1332(a) ["The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between …"].)

"When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  (*Dart Cherokee Basin Operating Co.*, 574 U.S. at 84, citing 28 U.S.C. § 1446(c)(2)(A); see also 28 U.S.C. § 1446(c)(2) ["(A) the notice of removal may assert the amount in controversy if the initial pleading seeks— … (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."].)

Additionally, "[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  (*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see also *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); and 28 U.S.C. § 1446(c)(2)(B).)

"A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.  [Citation]  (plaintiff's settlement offer is properly consulted in determining 'plaintiff's assessment of the value of her case'); ... [Citation] ('Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in

1 controversy exceeded $50,000, it is 'apparent' that removal was proper.'" (*Cohn v. Petsmart, Inc.*,
2 281 F.3d 837, 840 (9th Cir. 2002), original citations omitted.)

3    In plaintiff's January 9, 2025 first notice to Rover of his complaint, he made a $750,000
4 settlement demand. (Exhibit A at pp. 1 & 3-4.) This demand is based on his complaint's allegations
5 he sustained significant force bites in his right hand and fingers, deep puncture wounds, a torn
6 ligament, permanent mobility loss in his hand, aggravation of a pre-existing foot fracture leading to
7 prolonged pain and mobility issues. (Exhibit B at 7:17-20 (¶ 21).) Plaintiff further alleges he has
8 incurred substantial medical expenses for emergency treatment, surgical intervention, and ongoing
9 rehabilitation. (Id., at 8:6-8 (¶ 23).) Finally, he alleges he sustained significant emotional distress,
10 including anxiety and fear of future dog interactions, loss of income, diminished earning capacity as he
11 is unable to work as a pet sitter, and has faced challenges in security alternative employment. (Id., at
12 8:7-13 (¶ 23).) Thus, Rover shows the amount in controversy exceeds $75,000. In sum, diversity
13 jurisdiction exists.

14 **C.    Plaintiff Is Subject To The Federal Arbitration Act**

15    Under the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect,
16 or refusal of another to arbitrate under a written agreement for arbitration may petition any United
17 States district court which, save for such agreement, would have jurisdiction ...." (9 U.S.C. § 4; see
18 also *Badgerow v. Walters*, 142 S.Ct. 1310, 1314 (2022).) "Section 4 provides for an order compelling
19 arbitration only when the federal district court would have jurisdiction over a suit on the underlying
20 dispute; hence, there must be diversity of citizenship or some other independent basis for federal
21 jurisdiction before the order can issue." (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
22 460 U.S. 1, 26, fn. 34 (1983).)

23    Plaintiff admits "Defendant Rover.com" is "an online platform connecting pet owners with
24 services providers ..." (Exhibit B at 2:13-14 (¶ 3).) Plaintiff further alleges he is a professional pet
25 sitter who engaged "through the Rover.com platform" on November 26, 2022 to sit for defendant
26 Jacqueline Lambert's dog when it attacked a smaller dog, and he sustained injuries to separate the
27 animals. (Id., at 2:23-3:4 (¶ 4).
28 ///

In order to use Rover's platform, plaintiff was required to agree to the October 27, 2020 Terms of Service ("Terms") then in effect on November 26, 2022. (Exhibit D.) The Terms provide in relevant part:

**1. Acceptance of Terms; Modifications.**

These Terms of Service (the "**Terms**") are a binding legal agreement between you and A Place for Rover, Inc., a company incorporated under the laws of Delaware with a registered office at 711 Capitol Way S., Suite 204,Olympia, WA 98501 ("**Rover**," "**we**," "**us**" and "**our**"). The Terms govern your use of our software applications, resources and services for pet owners and pet service providers to find each other, communicate with each other, and arrange for the provision of pet care services (collectively, our "**Rover Service**"). The Terms govern all use of the Rover Service, whether you access it from our website at https://www.rover.com (or any localized version) (the "**Site**"), our mobile applications and mobile websites, our Facebook application, our online or phone support offerings, or any other access point we make available to you. Our Rover Guarantee Terms (/terms/guarantee/), Reservation Protection Policy (/terms/reservation-protection/) and other Policies applicable to your use of the Rover Service are incorporated by reference into these Terms of Service. BY AGREEING TO THESE TERMS DURING THE ACCOUNT SIGN-UP PROCESS OR ACCESSING OR USING THE ROVER SERVICE WITHOUT AN ACCOUNT, YOU ACCEPT THESE TERMS. IF YOU DO NOT AGREE WITH THESE TERMS, YOU SHOULD NOT ACCEPT THEM, IN WHICH CASE YOU DO NOT HAVE THE RIGHT TO USE THE ROVER SERVICE....

**17. Arbitration Agreement.**

**PLEASE READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH ROVER AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US....**

17.1 Arbitration Agreement; Claims. This Section 17 is referred to as the "Arbitration Agreement" in these Terms. Unless you opt out of the Arbitration Agreement in accordance with the procedure described in Section 17.9 below, you and Rover (together, the "Parties") agree that any and all disputes or claims that arise between you and Rover relating to the Rover Service, interactions with others on the Rover Service, and/or these Terms (including any alleged breach of these Terms) (collectively, "**Claims**"), except for Excluded Claims (defined in the following sentence), will be resolved as set forth in this Arbitration Agreement. As used herein, "Excluded Claims" means (1) individual claims brought in small claims court (if your claims qualify), (2) claims arising out of or related to a violation of Section 4.1, above, (3) claims in which either party seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property (including, without limitation, copyrights, trademarks, tradenames, logos, trade secrets or patents), and (4) claims that, as a matter of applicable law, cannot be made subject to arbitration.

17.2 Agreement to Arbitrate. Unless you opt out of the Arbitration Agreement in accordance with the procedure described in Section 17.9 below, you agree that any and all Claims (other than Excluded Claims) will be resolved exclusively **on an individual basis through final and binding arbitration, rather than in a court**, in accordance with this Arbitration Agreement, and **your rights in connection with all Claims (other than Excluded Claims) will be determined by a neutral arbitrator, not by a judge or jury**. The Federal Arbitration Act governs the interpretation and enforcement

of this Arbitration Agreement. To the extent that the Parties' dispute involves both timely filed Excluded Claims and other Claims subject to this Agreement, the Parties agree to bifurcate and stay for the duration of the arbitration proceedings any such Excluded Claims....

17.5 Arbitration Procedures....

The arbitrator will decide the substance of all claims in accordance with the laws of the State of Washington ....  As limited by applicable law, these Terms and the applicable JAMS Rules, the arbitrator will have (1) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Claim, including the determination of whether a Claim is arbitrable, and (2) the authority to grant any remedy that would otherwise be available in court.  (Exhibit D §§ 1, 17.1-17.2 & 17.5.)

Per section 1, plaintiff agreed to the Terms when he signed up for, and used Rover's platform to connect with, and to provide sitter services for dog owner Ms. Lambert.  (Exhibit D § 1.)  Per section 17.1, plaintiff further agreed to arbitrate all disputes or claims between him and Rover.  (Id., at § 17.1.)  Finally, he agreed the FAA applied to interpret and to enforce the arbitration agreement with the arbitrator having exclusive authority to make all procedural and substantive decisions, including whether plaintiff's claim is arbitrable.  (Id., at §§ 17.2 & 17.5.)  Accordingly, Rover is reserving its right to arbitrate plaintiff's claim.

## III.   COPIES OF ALL PROCESS, PLEADINGS, AND ORDERS

Per 28 United States Code section 1446(a), true and correct copies of all pleadings, process, and orders issued in this case are attached as Exhibits B and C.

## IV.   ALL SERVED DEFENDANTS CONSENT TO REMOVAL

"When a civil action is removed solely under section 1441(a), all defendants who have been properly joined **and served** must join in or consent to the removal of the action."  (28 U.S.C. § 1446(b)(2)(A), emphasis added.)

Rover is not removing solely under section 1441(a) (federal question jurisdiction), it is also removing under section 1441(b) (diversity jurisdiction).  However, as plaintiff does not know Ms. Lambert's current address, he has not served her.  (Exhibit D at 4:11-13 (¶ 9).)  Thus, her consent would not be required due to non-service.  As plaintiff has served Rover, only its consent would be required which it has given by removing this case to federal court.  (Exhibit C p.1)

///

///

1    **V.    ROVER SHALL GIVEN WRITTEN NOTICE OF REMOVAL**

2          Per 28 United States Code section 1446(d), Rover shall give written notice of removal to all

3    adverse parties who have appeared, and shall file a copy of the notice with the clerk of the Superior

4    Court of California, County of Los Angeles.

5    DATED:  February 6, 2025

6                                                    HEATH & YUEN, APC

7

8                                         By _____
                                                    Stephen B. Heath
9                                                    Attorneys for Defendant
                                                    A PLACE FOR ROVER, INC.

DEFENDANT A PLACE FOR ROVER, INC.'S NOTICE OF REMOVAL

**CERTIFICATE OF SERVICE**

I, Wendy H. Yang, declare:

At the time of service I was over 18 years of age, and not a party to this action.  My business mailing address is 268 Bush Street, #3006, San Francisco, California 94104.

On February 6, 2025, I served the following document(s) on the parties in the within action:

**DEFENDANT A PLACE FOR ROVER, INC.'S NOTICE OF REMOVAL**

| X | **BY MAIL**:  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed below, and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid. |
|---|---|

Jeremy Cotter                                        In Propria Persona For Plaintiff
6400 Crescent Park East, Unit 404          JEREMY COTTER
Playa Vista, CA 90094-2342
Phone (650) 918-6034
localmailboxdirect@gmail.com

I declare under penalty of perjury under the laws of the United States of America the foregoing is a true and correct statement, and I executed this certificate on February 6, 2025.

By _____
Wendy H. Yang

DEFENDANT A PLACE FOR ROVER, INC.'S NOTICE OF REMOVAL

**JEREMY COTTER**                                    **VIA CERTIFIED MAIL**
6400 Crescent Park E, #404,
Playa Vista, CA 90094
Phone: 650-918-6034
e-mail: localmailboxdirect@gmail.com

**Dated:** January 9th, 2025

**A Place for Rover, Inc. (Rover.com)**
Attn: Legal, 711 Capitol Way S.,
Suite 204, Olympia, WA 98501

Re: <u>**Formal Demand for Settlement – Jeremy Cotter v. A Place for Rover, Inc., Case No.**</u>
<u>**24STCV33232**</u>

**To the Legal Department of Rover.com,**

I, Jeremy Cotter, am writing to formally address the matter of the severe injuries and extensive damages I sustained on November 26, 2022, while performing pet-sitting services through your platform, Rover.com. Please be advised that a Complaint for Damages has already been filed against A Place for Rover, Inc. (Rover.com) in the Superior Court of California, County of Los Angeles. The complaint outlines the substantial harm I suffered and Rover.com's failures in fulfilling its legal obligations to ensure my safety while using your platform and has been attached as an enclosure this demand letter.

The consequences of this attack extend beyond physical injuries. I have endured severe emotional distress, including persistent trauma, anxiety, and an overwhelming fear of interacting with animals—factors that have directly impaired my ability to earn a livelihood as a professional pet sitter. Moreover, I have incurred significant financial losses, including substantial medical bills, ongoing rehabilitation expenses, lost income, and diminished future earning capacity.

Rover.com publicly represents itself as a safe, reliable platform, emphasizing comprehensive pet behavior vetting, robust insurance protections, and 24/7 support. These claims

Page **1** of **4**

**Exhibit A-1**

create an expectation of safety and accountability. However, these representations were grossly misleading:

1. Despite Section 4.1 of your Terms of Service, which prohibits the listing of animals with known aggressive tendencies, Xena was listed on your platform without any meaningful oversight or verification.

2. Rover.com relied entirely on self-reported information from the pet owner without requiring any independent verification of the animal's behavior or history.

3. The widely advertised "Rover Guarantee" was revealed to exclude injuries sustained by service providers like me—a critical limitation that was neither clearly disclosed nor reasonably communicated during the registration process.

Under *California Civil Code* § 1714, Rover.com owed me a duty of care to prevent foreseeable harm arising from its operations. The *Rowland v. Christian*, 69 Cal. 2d 108 (1968) decision reinforces this principle, emphasizing that foreseeability of harm establishes a non-delegable duty of care. By failing to screen Xena properly, enforce its own safety policies, and provide adequate insurance coverage, Rover.com breached this duty of care.

Rover.com's actions constitute negligence and fraudulent misrepresentation under California law. In *Cisneros v. Costal*, 121 Cal. App. 3d 318, it was held that entities with supervisory oversight have a duty to prevent foreseeable harm. Furthermore, in *Lazar v. Superior Court*, 12 Cal. 4th 631, fraudulent misrepresentation arises when knowingly false statements induce reliance, resulting in damages. Your platform's representations regarding safety protocols and insurance protections created a false sense of security, directly contributing to the injuries and damages I suffered.

The Terms of Service imposed by Rover.com contain provisions that are procedurally and substantively unconscionable. These Terms were presented in a take-it-or-leave-it format, offering no opportunity for meaningful negotiation. Substantively, these provisions unfairly favor

**Exhibit A-2**

Rover.com while shifting unreasonable risk and liability onto service providers like me. These include:

1. Clauses that effectively absolve Rover.com of responsibility for injuries like mine.
2. Provisions contradicting your platform's publicly advertised safety assurances.
3. Unreasonably shifting financial burdens onto service providers.

Under *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, contracts of adhesion containing such unconscionable terms are deemed unenforceable.

As a direct result of the injuries I sustained, I have been left with a permanent disability that significantly impairs my ability to work and engage in daily activities. Both the *Americans with Disabilities Act (ADA)* and the *California Fair Employment and Housing Act (FEHA)* mandate reasonable accommodations for individuals with disabilities. In *Robles v. Domino's Pizza*, LLC, 913 F.3d 898 (9th Cir. 2019), it was established that online platforms must ensure accessibility and accommodations for individuals with disabilities. Despite my repeated requests, Rover.com failed to engage in the interactive process or provide any accommodations, further exacerbating my harm.

a) To resolve this matter without prolonging litigation, I demand the following:
b) Compensatory damages in the amount of $750,000 to cover medical expenses, lost income, reduced earning capacity, and emotional distress.
c) Implementation of basic behavioral assessments for high-risk pets listed on Rover.com.
d) Revisions to the Terms of Service to enhance clarity on insurance coverage, and avoid unconscionable provisions.
e) Reimbursement of reasonable costs incurred in pursuing this matter.

I request that you provide a written response within fourteen (14) days of receiving this letter. Should Rover.com fail to respond or decline to engage in meaningful settlement

**Exhibit A-3**

discussions, I will have no choice but to pursue all available legal remedies, including claims for punitive damages and injunctive relief.

This letter is issued **without prejudice to my rights, claims, or remedies**, all of which are expressly reserved.

I strongly advise Rover.com to consider this matter with the seriousness it deserves and respond promptly to avoid further escalation.

Sincerely,

Jeremy Cotter

**Enclosures:**

- Copy of Filed Complaint

**Exhibit A-4**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

JEREMY COTTER
6400 Crescent Park E, #404,
Playa Vista, CA 90094
TELEPHONE NO. 650-918-6034

Plaintiff In Pro Per

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/17/2024 8:11 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## IN AND FOR COUNTY OF LOS ANGELES

| | |
|---|---|
| JEREMY COTTER<br><br>        Plaintiff,<br><br>v.<br><br>JACQUELINE LAMBERT, and<br>A PLACE FOR ROVER, INC., DBA<br>ROVER.COM,<br>a Delaware Corporation,<br><br>        Defendants. | CASE NO: 24STCV33232<br><br><br>**COMPLAINT FOR DAMAGES** |

Pursuant to *California Civil Code §§ 3342, 1714, California Business and Professions Code § 17200 et seq.,* and other applicable state and federal laws, Plaintiff Jeremy Cotter brings this Complaint against Defendants Jacqueline Lambert and A Place for Rover, Inc. (hereafter "Rover.com") for damages and injunctive relief arising from injuries caused by a dangerous dog attack enabled through negligent and misleading practices of the Defendants.

## I.     INTRODUCTION

-1-

**Exhibit B-1**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

1. This action arises from a preventable dog attack facilitated through the combined negligence, misrepresentations, and omissions of Defendants Jacqueline Lambert and A Place for Rover, Inc., doing business as Rover.com. Plaintiff Jeremy Cotter, a professional pet sitter engaged through the Rover.com platform, suffered severe and permanent injuries as a direct result of these Defendants' actions and failures.

2. Defendant Lambert knowingly misrepresented the dangerous tendencies of her dog, Xena, an American Pit Bull Terrier with a documented history of unprovoked aggression towards humans and other animals. Despite being fully aware of Xena's violent behavior, Lambert assured Plaintiff that the dog was well-behaved and suitable for pet-sitting, depriving Plaintiff of critical information needed to protect himself and others. Relying on Lambert's false assurances, Plaintiff agreed to care for Xena, unaware of the significant risks involved.

3. Defendant Rover.com, an online platform connecting pet owners with service providers, failed to fulfill its legal obligations to ensure the safety of individuals utilizing its services. The platform prominently advertises its commitment to safety, emphasizing its pet owner and pet screening processes, 24/7 support, and insurance protections. These representations induced Plaintiff to register with the platform and accept assignments under the belief that Rover.com provided a secure environment for service providers. Contrary to these assurances, Rover.com relied solely on self-reported information from pet owners, failed to vet pets for aggressive behavior, and did not enforce its own policies prohibiting the listing of dangerous animals.

4. On November 26, 2022, while walking Xena as part of his assigned duties in Playa Vista, California, Xena attacked a smaller dog accompanying a family with a baby. Observing

-2-

**COMPLAINT FOR DAMAGES**

<span style="color:red">**Exhibit B-2**</span>

the imminent danger, Plaintiff intervened to separate the animals. During the altercation, Xena redirected her aggression toward Plaintiff, biting his hand and causing severe injuries, including deep puncture wounds, torn ligaments, and permanent mobility loss. Plaintiff also aggravated a pre-existing foot fracture while attempting to restrain the dog. These injuries required extensive medical treatment, caused significant emotional distress, and resulted in permanent disability, leaving Plaintiff unable to continue his work as a pet sitter.

5. Rover.com's negligence in failing to enforce safety protocols, vet pets listed on its platform, and provide meaningful support or insurance coverage exacerbated the harm caused by Lambert's misrepresentations. Despite advertising its platform as safe and reliable, Rover.com disclaimed responsibility for the incident, citing limitations in its Terms of Service, which were presented to Plaintiff as a non-negotiable contract of adhesion. These disclaimers contradicted the platform's public assurances and deprived Plaintiff of meaningful recourse for his injuries and losses.

6. This case exemplifies the systemic failures of gig economy platforms like Rover.com, which profit from the labor of independent contractors while neglecting their duty of care. Defendant Lambert's intentional misrepresentations and Defendant Rover.com's operational shortcomings combined to create the conditions for this violent and avoidable incident.

7. Plaintiff now seeks to hold both Defendants accountable for their actions and omissions. Through this lawsuit, Plaintiff seeks recovery under theories of strict liability, negligence, fraudulent misrepresentation, and intentional infliction of emotional distress. Plaintiff also challenges the unconscionable terms of Rover.com's contract and asserts claims under

-3-

**COMPLAINT FOR DAMAGES**

**Exhibit B-3**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

disability discrimination laws for the platform's failure to provide reasonable accommodations after the incident. In addition to compensatory and punitive damages, Plaintiff requests injunctive relief compelling Rover.com to implement meaningful safety measures, including independent behavioral screening of pets and adequate insurance protections for service providers.

## II.  PARTIES

8. Plaintiff, Jeremy Cotter is an individual residing at 6400 Crescent Park E, #404, Playa Vista, California 90094. At all relevant times, Plaintiff was engaged as a pet sitter through the Rover.com platform, providing pet care services within Los Angeles County, California.

9. Jacqueline Lambert is an individual whose current address is unknown to the Plaintiff despite diligent efforts to ascertain it. Plaintiff reserves the right to amend this Complaint to include Defendant's address once it is discovered. Defendant is the owner of an American Pit Bull Terrier named Xena, with a known history of aggressive behavior. At all relevant times, Defendant engaged Plaintiff's services to care for Xena within Los Angeles County, California.

10. A Place for Rover, Inc., doing business as Rover.com, is a corporation incorporated under the laws of Delaware, with its registered office at 711 Capitol Way S., Suite 204, Olympia, WA 98501.

## III.  JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10, which provides that a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States. The

-4-

COMPLAINT FOR DAMAGES

**Exhibit B-4**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

incident giving rise to this action occurred within the State of California. Defendant Jacqueline Lambert is a resident of California, and Defendant Rover.com, Inc., conducts substantial business activities within California, thereby establishing personal jurisdiction over both Defendants.

13. This Court has personal jurisdiction over Defendant A Place for Rover, Inc., doing business as Rover.com, because Defendant conducts continuous and systematic business activities within the State of California. Defendant advertises its services, recruits pet sitters and dog walkers, and facilitates pet care transactions between California residents through its platform. By engaging in such activities and purposefully availing itself of the privilege of conducting business within California, Defendant has subjected itself to the jurisdiction of California courts.

14. Venue is proper in this Court under California Code of Civil Procedure §§ 395(a) and 395.5, as the injury occurred in Los Angeles County, and Defendant Jacqueline Lambert resides in this county. Furthermore, the pet-sitting assignment that resulted in Plaintiff's injuries was arranged through Defendant Rover.com's platform and was performed in Playa Vista, California, which lies within this jurisdiction.

15. Additionally, this Court has supplemental jurisdiction over related state law claims against Rover.com, pursuant to 28 U.S.C. § 1367(a), because such claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, the pet-sitting assignment arranged through Rover.com's platform that

COMPLAINT FOR DAMAGES

Exhibit B-5

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

resulted in Plaintiff's injuries occurred in Playa Vista, California, which lies within this judicial District.

17. This Court has subject matter jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10, which provides that a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States. The incident giving rise to this action occurred within the State of California, and the Defendant, is a resident of California, thereby establishing personal jurisdiction.

18. Venue is proper in this Court under California Code of Civil Procedure §§ 395(a) and 395.5, as the injury occurred in Los Angeles County, and the Defendant resides in this county. Therefore, this Court is the appropriate forum for adjudicating the claims set forth herein.

## IV.    FACTUAL BACKGROUND

23. Rover.com, Inc. operates an online platform designed to connect pet owners with independent service providers, such as pet sitters and dog walkers. The platform claims, in its website policies, to offer a safe, reliable, and well-supported experience for both pet owners and service providers. Rover.com prominently advertises its commitment to safety, emphasizing its pet owner and pet screening processes, 24/7 support, and comprehensive insurance coverage. These assurances create a reasonable expectation that assignments arranged through the platform are vetted and safe.

24. Plaintiff Jeremy Cotter is a professional pet sitter who registered on Rover.com in reliance on the platform's representations regarding safety and support. Plaintiff used the platform to accept pet-sitting assignments and believed that Rover.com's purported safeguards minimized the risks inherent in such work. Plaintiff also relied on Rover.com's

COMPLAINT FOR DAMAGES

**Exhibit B-6**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

assurances of insurance coverage to protect service providers from incidents arising during assignments.

19. On or about November 26, 2022, at approximately 9:00 AM PST, Plaintiff Jeremy Cotter, a professional pet sitter engaged through the Rover.com platform, was entrusted with the care of Defendant Jacqueline Lambert's American Pit Bull Terrier, Xena. Prior to this engagement, Defendant assured Plaintiff that Xena was well-behaved and posed no risk to handlers or the public. Relying on these representations, Plaintiff agreed to provide pet care services for Xena.

20. While walking Xena at the Centerpoint Club in Playa Vista, California, Xena suddenly exhibited aggressive behavior, escaping her leash and charging towards a smaller dog that was accompanying a family with a baby in a stroller. The smaller dog positioned itself protectively between Xena and the stroller, prompting Xena to attack. In a swift and violent manner, Xena bit and shook the smaller dog, causing it to yelp in pain.

21. Observing the imminent danger to the smaller dog and the nearby infant, Plaintiff intervened to separate the animals. During this intervention, Xena redirected her aggression towards Plaintiff, biting his right hand and fingers with significant force. The attack resulted in deep puncture wounds, a torn ligament, and subsequent permanent mobility loss in Plaintiff's hand. Additionally, in the course of restraining Xena, Plaintiff aggravated a pre-existing foot fracture, leading to prolonged pain and mobility issues. (See Exhibit A – Photographs of Plaintiff's hand injuries, taken immediately after the incident, depicting the severity of the wounds inflicted by Xena)

22. Following the incident, John, a friend of Jacqueline who arrived to retrieve Xena, disclosed to Plaintiff that Xena had a documented history of aggressive behavior, including previous

COMPLAINT FOR DAMAGES

**Exhibit B-7**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

attacks on other dogs and instances of unprovoked aggression towards humans. Despite this knowledge, Defendant Jacqueline Lambert failed to inform Plaintiff of Xena's dangerous propensities prior to entrusting him with the dog's care. This omission deprived Plaintiff of the opportunity to take necessary precautions, directly resulting in the injuries and damages he sustained.

23. As a consequence of the attack, Plaintiff has incurred substantial medical expenses for emergency treatment, surgical intervention, and ongoing rehabilitation. The injuries have also led to significant emotional distress, including anxiety and fear of future dog interactions, adversely affecting Plaintiff's personal and professional life. Furthermore, the physical limitations imposed by the injuries have resulted in loss of income and diminished earning capacity, as Plaintiff has been unable to perform his duties as a pet sitter and has faced challenges in securing alternative employment.

24. Rover.com's policies and practices fail to ensure the safety of service providers. The platform does not independently verify the behavioral histories of pets listed by users, instead relying solely on pet owner disclosures. Furthermore, Rover.com does not require pet owners to provide documentation of vaccinations, training, or behavioral assessments, leaving significant safety gaps in the assignment process.

25. Additionally, Rover.com fails to implement any mandatory safety protocols for service providers, such as guidelines for handling potentially aggressive animals. This systemic neglect creates an environment where service providers are exposed to foreseeable and preventable risks without adequate safeguards.

26. Rover.com misrepresented the scope of its insurance coverage and support to induce Plaintiff and others to register and accept assignments. Specifically, Rover.com claimed

COMPLAINT FOR DAMAGES

Exhibit B-8

to offer insurance protection for incidents occurring during assignments, but when Plaintiff sought coverage for medical expenses and damages arising from the November 26, 2022 incident, Rover.com denied responsibility. Defendant cited limitations in its insurance policies that were not disclosed to Plaintiff at the time of registration or assignment acceptance.

27. Despite Plaintiff's requests for assistance and coverage, Rover.com denied liability, refused to provide support, and failed to take corrective measures to prevent similar incidents in the future.

### FIRST CAUSE OF ACTION

### STRICT LIABILITY PURSUANT TO CALIFORNIA CIVIL CODE § 3342

#### (Against Defendant Jacqueline Lambert)

28. Plaintiff Jeremy Cotter realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

29. At all relevant times, Defendant Jacqueline Lambert owned and controlled an American Pit Bull Terrier named Xena. Defendant had prior knowledge of Xena's dangerous tendencies, including documented incidents of aggression and unprovoked attacks on other animals. Despite this knowledge, Defendant failed to disclose these facts when entrusting Plaintiff with the care of her dog.

30. On or about November 26, 2022, while lawfully present at the Centerpoint Club in Playa Vista, California, Plaintiff was performing professional pet-sitting services when Xena, without provocation, escaped her leash and violently attacked Plaintiff. Xena bit Plaintiff's right hand and fingers, causing severe physical injuries, including deep puncture wounds, torn ligaments, and permanent mobility loss. Additionally, during the attack, Plaintiff

-9-

COMPLAINT FOR DAMAGES

**Exhibit B-9**

aggravated a pre-existing foot fracture, resulting in prolonged pain and physical limitations.

31. Pursuant to *California Civil Code § 3342(a),*

> *"The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness."*

32. Defendant is strictly liable for the injuries caused by her dog under this statute. Liability arises solely from Defendant's ownership of the dog and does not require a showing of negligence or fault.

33. Relevant case law supports the application of strict liability in this matter. In *Buffington v. Nicholson,* 78 Cal. App. 2d 37, the court held that a dog owner is strictly liable for injuries caused by their dog, even where the victim had temporary possession of the animal. Similarly, in *Johnson v. McMahan,* 68 Cal. App. 4th 173, the court clarified that visible wounds are not required to establish liability under § 3342; any injury resulting from a bite suffices. These precedents unequivocally establish Defendant's strict liability for the harm suffered by Plaintiff.

34. As a direct and proximate result of Defendant's failure to control Xena, Plaintiff, as demonstrated in Exhibit A has incurred significant damages, including:

   a. Extensive medical expenses for emergency care, surgery, and rehabilitation.

   b. Permanent physical impairment, resulting in reduced mobility and chronic pain.

   c. Substantial loss of income due to the inability to perform work-related tasks.

   d. Severe emotional distress, including anxiety and trauma, stemming from the attack.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

COMPLAINT FOR DAMAGES

**Exhibit B-10**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

**(Against both Defendants)**

35. Plaintiff hereby re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs.

36. At all relevant times, Defendant Jacqueline Lambert owed Plaintiff a duty of care to ensure that the dog entrusted to him, Xena, did not pose a foreseeable risk of harm. Defendant Lambert was aware or should have been aware of Xena's aggressive tendencies, including prior incidents of unprovoked attacks and violent behavior. Despite this knowledge, Defendant Lambert negligently failed to inform Plaintiff of these dangerous tendencies and failed to take reasonable precautions to prevent Xena from causing harm.

37. Defendant Lambert breached her duty of care by allowing Xena to be placed under Plaintiff's care without disclosing the dog's history of aggression or providing appropriate safeguards to mitigate the risk of harm. Defendant Lambert's failure to act as a reasonably prudent dog owner in such circumstances directly created a dangerous condition, culminating in the attack on Plaintiff.

38. At all relevant times, Defendant A Place for Rover, Inc., doing business as Rover.com, owed Plaintiff a duty of care to ensure that its platform provided a safe and secure environment for service providers, including pet sitters such as Plaintiff, to perform assignments arranged through the platform. This duty arose from Defendant Rover's operational role in facilitating interactions between service providers and pet owners, its representations of safety and insurance coverage, and its awareness of the inherent risks associated with pet care.

-11-

COMPLAINT FOR DAMAGES

**Exhibit B-11**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

39. Defendant Rover owed Plaintiff a duty of care to operate its platform in a manner that ensured the safety of service providers, including pet sitters like Plaintiff, from foreseeable risks associated with the services arranged through its platform. This duty arises under *California Civil Code § 1714*, which mandates that entities act with reasonable care to prevent harm where the risk is foreseeable. As a platform facilitating interactions between pet owners and service providers, and as a business profiting from these transactions, Rover had an obligation to exercise reasonable care in its operational policies, including the vetting of pets and the provision of accurate safety assurances.

40. Defendant Rover breached this duty of care by failing to implement even minimal safeguards to protect Plaintiff from foreseeable harm. Despite advertising its platform as a safe and trusted marketplace, Rover explicitly disclaimed responsibility for verifying pet behavioral histories in its Terms of Service ("TOS"). As per Section 2.2, Rover relied entirely on self-reported information from pet owners. This reliance, without independent verification, created a foreseeable risk of harm to service providers, as demonstrated in this case. Defendant's failure to screen the dog involved, Xena, allowed a known aggressive animal to be placed under Plaintiff's care without any warning or meaningful precaution.

41. Defendant Rover further breached its duty of care by misrepresenting the safety and insurance protections offered to service providers. Rover's marketing materials implied comprehensive insurance coverage and robust support mechanisms for individuals injured during pet care assignments. However, Rover's actual policies excluded meaningful protections, including adequate incident response and coverage for sitters like Plaintiff.

-12-

COMPLAINT FOR DAMAGES

Exhibit B-12

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

42. Rover's failure to enforce its own policies exacerbated its negligence. Section 4.1 of the Terms of Service prohibits the listing of animals with a known history of aggression. However, Rover did not enforce this prohibition effectively, allowing Xena, an animal with documented aggressive tendencies, to remain listed and available for assignments. Defendant's failure to act on this known risk demonstrates gross disregard for the safety of its service providers.

43. Rover.com's policies demonstrate a blatant disregard for service provider safety by allowing pet owners to self-report animal behaviors without any verification requirements. This lax approach not only fails to meet the standard of care but also directly contributes to an unsafe working environment. A reasonable platform acting under California's duty of care principles would have enforced strict behavioral vetting of animals, particularly those with documented aggression. By abdicating this duty, Rover.com breached the standard of care owed to the Plaintiff, setting the conditions for this harmful incident.

44. Moreover, Rover misrepresented the safety of its platform by promoting itself as a trusted and secure marketplace while failing to implement meaningful safety protocols or provide comprehensive support for service providers. Despite advertising its "Rover Guarantee," the protections were inadequate and misleading, as they excluded critical scenarios like the one that resulted in Plaintiff's injuries.

45. Although Rover.com does not employ service providers in a traditional sense, the platform assumes a supervisory role by structuring the conditions under which providers perform pet-sitting services. Under California law and the Restatement (Second) of Torts § 317, entities that facilitate third-party interactions may bear responsibility for negligent supervision, especially where foreseeable risks exist. Rover.com's failure to screen pets

-13-

COMPLAINT FOR DAMAGES
Exhibit B-13

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

for aggression represents a negligent supervisory oversight, directly impacting the safety of those using its platform.

46. A competent platform would have recognized the need for thorough behavioral vetting of pets listed on its platform, especially those prone to aggression. Instead, Rover.com negligently allowed Jackie, the dog owner, to list Xena without requiring verification of the pet's behavior. This lack of oversight reflects a gross failure in supervision, placing the Plaintiff in an environment with significant, unmitigated risks. Had Rover.com implemented mandatory behavior checks, the Plaintiff would have been aware of Xena's violent tendencies and could have avoided the incident altogether.

47. As a direct and proximate result of the combined negligence of both Defendants:

   a. Plaintiff was violently attacked by Xena while performing pet-sitting services at the Centerpoint Club in Playa Vista, California.

   b. Plaintiff sustained severe physical injuries, including deep puncture wounds, torn ligaments, and permanent mobility loss in his hand, as well as the aggravation of a pre-existing foot fracture.

   c. Plaintiff has endured significant economic losses, including medical expenses, loss of income, and diminished earning capacity.

   d. Plaintiff suffered severe emotional distress, including anxiety, fear, and trauma, significantly reducing his quality of life.

48. California law supports the imposition of liability for negligence on both Defendants:

   a. For dog owners, as established in *Cisneros v. Costal,* 121 Cal. App. 3d 318, failure to take reasonable precautions when aware of a dog's dangerous tendencies constitutes negligence.

-14-

COMPLAINT FOR DAMAGES

# Exhibit B-14

      b.  For platforms like Rover.com, as established in *Rowland v. Christian,* 69 Cal. 2d 108 (1968), foreseeability of harm creates a duty of care. Rover's failure to verify pet behavioral histories, enforce its policies, or implement effective safety measures foreseeably created a risk of harm to service providers.

49. Defendant Rover's gross negligence, systematic policy failures, and reckless disregard for the safety of its service providers have caused Plaintiff severe physical, emotional, and economic harm. Plaintiff seeks to hold both Defendants accountable for their respective breaches of duty and the resulting damages.

**THIRD CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION**

**(Against Jacqueline Lambert)**

50. The Plaintiff, Prior to the November 26, 2022 incident, Defendant Jacqueline Lambert intentionally misrepresented material facts regarding her dog, Xena, to Plaintiff. Specifically, Defendant assured Plaintiff that Xena was a safe and friendly dog, suitable for professional pet-sitting services, and omitted any disclosure of Xena's aggressive tendencies or history of unprovoked attacks. Defendant knew or should have known that these statements were false and that withholding such critical information would expose Plaintiff to significant harm.

51. Defendant made these misrepresentations and omissions with the intent to induce Plaintiff to provide pet-sitting services for Xena. Plaintiff, relying on Defendant's representations, accepted responsibility for Xena and was not made aware of the substantial risks associated with the dog's known violent tendencies.

-15-

**COMPLAINT FOR DAMAGES**

**Exhibit B-15**

52. California law establishes that intentional misrepresentation occurs where a defendant knowingly makes false statements or omits material facts with the intent to deceive another party, leading to reliance and resulting harm. In *Lazar v. Superior Court*, 12 Cal. 4th 631, the California Supreme Court held that intentional misrepresentation requires proof of a knowingly false statement, intent to defraud, justifiable reliance, and resulting damages. Defendant's conduct satisfies all these elements, rendering her liable for the injuries and damages sustained by Plaintiff.

## FOURTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

### (Against Rover.com)

23. Plaintiff hereby re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs.

24. The Defendant has knowingly made false and misleading representations about the safety, reliability, and insurance protections offered to service providers using its platform. These misrepresentations were designed to induce reliance by service providers, including Plaintiff, to accept pet care assignments under the belief that Rover had implemented safeguards to protect them from foreseeable risks. Defendant's conduct constitutes fraudulent misrepresentation under California law.

25. Rover, through its claims on its website, has misrepresented the safety of its platform by advertising itself as a trusted and secure marketplace for connecting pet owners with service providers. Defendant implied through its marketing and operational materials that the pets listed on its platform were adequately vetted and that assignments facilitated through Rover were safe for service providers. However, Defendant's Terms of Service (Section 2.2)

-16-

**Exhibit B-16**

explicitly state that Rover does not independently verify the behavioral histories of animals listed on its platform, relying entirely on self-reported information from pet owners. This omission contradicts Rover's public assurances and concealed material risks from service providers like Plaintiff.

26. Rover advertised its "Rover Guarantee" as a safety net for incidents occurring during assignments, which would reimburse costs up to $25,000 for medical expenses or third-party injuries. However, Rover's Guarantee explicitly excludes injuries to sitters and dog walkers, rendering the Guarantee essentially useless to service providers like Plaintiff. Despite this exclusion, Rover's marketing materials created the false impression that service providers would be covered in the event of an injury while performing pet care assignments, which was critical to Plaintiff's decision to accept assignments on the platform. Defendant also misrepresented the safety of its platform by promoting itself as a trusted and secure marketplace.

27. Further, Rover implied that service providers could expect meaningful assistance in the event of an incident. Section 8.3 of Rover's Terms of Service merely requires users to report incidents but offers no substantive remedies or actionable support for service providers harmed during assignments. These omissions and misrepresentations created a false sense of security for Plaintiff and other service providers using the platform.

28. Defendant made these representations with full knowledge of their falsity or with reckless disregard for the truth. Rover deliberately concealed its lack of substantive safety measures, inadequate behavioral screening processes, and limited applicability of the Rover Guarantee to induce Plaintiff and others to accept assignments. Plaintiff justifiably relied on these misrepresentations when agreeing to accept the assignment involving Xena.

-17-

COMPLAINT FOR DAMAGES

Exhibit B-17

29. As a direct result of Defendant's fraudulent misrepresentations, Plaintiff was exposed to dangerous conditions and sustained severe injuries. These include deep puncture wounds, torn ligaments, and permanent mobility loss in Plaintiff's hand, as well as the aggravation of a pre-existing foot fracture, leading to prolonged pain and physical limitations. Plaintiff also experienced significant emotional distress, including trauma, anxiety, and fear resulting from the attack, and has suffered substantial economic damages, including medical expenses, lost income, and diminished earning capacity.

30. Under California law, fraudulent misrepresentation requires a knowingly false statement, intent to induce reliance, justifiable reliance, and resulting damages (*Lazar v. Superior Court, 12 Cal. 4th 631*). Defendant's conduct satisfies all these elements. Rover knowingly misrepresented the safety and protections of its platform and omitted material facts about its policies, causing Plaintiff to suffer injuries and damages.

31. Defendant's fraudulent misrepresentations demonstrate a conscious and reckless disregard for the safety and well-being of its service providers. Defendant acted intentionally to mislead Plaintiff and other service providers for financial gain at the expense of their safety. This conduct warrants not only compensatory damages but also punitive damages to deter similar practices in the future.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Jacqueline Lambert)

53. The Plaintiff Jeremy Cotter realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

-18-

COMPLAINT FOR DAMAGES

**Exhibit B-18**

54. At all relevant times, Defendant Jacqueline Lambert acted with extreme and outrageous conduct by knowingly and intentionally misrepresenting the temperament of her dog, Xena, to Plaintiff. Defendant was fully aware of Xena's dangerous tendencies, including prior acts of unprovoked aggression, yet she willfully withheld this critical information when placing the dog under Plaintiff's care.

55. Defendant's actions were intended to mislead Plaintiff into believing Xena posed no risk, or at minimum, were done with reckless disregard for the emotional and physical safety of Plaintiff. Defendant's conduct exceeds the bounds of decency, especially considering the foreseeable risk of harm that Xena's known aggressive behavior posed to Plaintiff and others.

56. As a direct result of Defendant's intentional or reckless conduct, Xena attacked Plaintiff while he was performing pet-sitting services at the Centerpoint Club in Playa Vista, California. The attack caused Plaintiff to sustain severe physical injuries, including deep puncture wounds, torn ligaments, and permanent mobility loss in his hand.

57. In addition to these physical injuries, the attack inflicted significant emotional distress, including severe anxiety, trauma, and a persistent fear of interacting with dogs, impairing Plaintiff's personal and professional life.

58. Defendant's actions demonstrate a conscious disregard for Plaintiff's safety and emotional well-being. California law recognizes that a claim for intentional infliction of emotional distress arises when a defendant's conduct is outrageous, intended to cause emotional harm, or undertaken with reckless disregard for the probability of causing such harm. In *Hughes v. Pair*, 46 Cal. 4th 1035, the California Supreme Court held that a claim for intentional infliction of emotional distress requires (1) outrageous conduct by the

COMPLAINT FOR DAMAGES

**Exhibit B-19**

defendant, (2) intent to cause or reckless disregard for the probability of causing emotional distress, (3) severe emotional distress suffered by the plaintiff, and (4) causation between the conduct and distress.

59. Defendant's conduct satisfies all these elements. Her intentional misrepresentation and reckless indifference to the danger posed by Xena's known aggressive tendencies directly caused Plaintiff's emotional distress. The severity of Plaintiff's distress is evidenced by the debilitating anxiety, fear, and trauma that have significantly impaired his ability to work and engage in daily activities.

### SIXTH CAUSE OF ACTION

### UNCONSCIONABILITY OF CONTRACTUAL TERMS

### (Against Rover.com)

60. Plaintiff Jeremy Cotter realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

61. This cause of action seeks a declaratory judgment that certain provisions within the Terms of Service ("Terms") imposed by Defendant A Place for Rover, Inc. ("Rover") are unconscionable and, therefore, unenforceable under California law. These Terms were presented to Plaintiff as a non-negotiable, standardized contract of adhesion, offering no opportunity for meaningful review or bargaining. As such, they are procedurally and substantively unconscionable under California law and should be deemed invalid.

62. The Terms include, but are not limited to, the following provisions:

   a. First, Section 9.1 of the Terms imposes a broad limitation of liability that effectively absolves Rover of any responsibility for harm caused to service providers during assignments facilitated through its platform. This provision bars Plaintiff from

**Exhibit B-20**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

recovering damages resulting from Rover's failure to vet pets or enforce meaningful safety protocols, even though Rover exercises control over the assignment process and profits directly from such transactions. The limitation of liability disproportionately protects Rover while denying Plaintiff, a vulnerable service provider, any meaningful recourse for the injuries he sustained.

b. Second, the Terms contain disclaimers of warranties, which deny any guarantees regarding the safety, suitability, or reliability of Rover's services, including its platform's representations of vetted and safe interactions. These disclaimers contradict Rover's public-facing assurances that its platform provides a secure and trusted environment for service providers and pet owners. Despite profiting from this marketed trust, Rover disclaims all liability for foreseeable risks arising from its operations, creating an imbalance that leaves service providers like Plaintiff unprotected.

c. Third, the Terms include a broad indemnification clause that shifts liability to service providers, requiring them to indemnify Rover for claims arising out of the use of the platform. This provision unreasonably places the financial and legal burden of risks created by Rover's negligence onto service providers, who often lack the resources to bear such responsibilities.

63. Under *California Civil Code § 1670.5(a)*, a court may refuse to enforce a contract or any clause within a contract if it is determined to be unconscionable at the time it was made. California courts assess unconscionability through a two-pronged analysis: procedural unconscionability, which focuses on the circumstances of contract formation, and

---

-21-

COMPLAINT FOR DAMAGES

**Exhibit B-21**

substantive unconscionability, which examines whether the terms are overly harsh or one-sided.

64. Procedural unconscionability is present because the Terms were offered to Plaintiff on a take-it-or-leave-it basis, characteristic of contracts of adhesion. Plaintiff had no opportunity to negotiate the Terms or opt out of specific provisions while still participating in Rover's platform. In *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal. 4th 83, 6 P.3d 669, the California Supreme Court established that contracts presented under such conditions, where one party has vastly superior bargaining power, are procedurally unconscionable.

65. Substantive unconscionability is evident in the harsh, one-sided nature of the Terms, which overwhelmingly favor Rover at the expense of service providers. In *Discover Bank v. Superior Court,* 30 Cal.Rptr.3d 76 the California Supreme Court held that substantively unconscionable terms are those that are unjustifiably favorable to the more powerful party. Rover's limitation of liability, indemnification requirements, and disclaimers of warranties unfairly shift risks and burdens onto service providers like Plaintiff, who are the least equipped to absorb them.

66. The unconscionability of these Terms is compounded by the disparity between Rover's public representations and the actual protections provided by the contract. Rover markets its platform as safe, reliable, and supportive but constructs its Terms to disclaim liability for any harm caused by its failure to enforce safety standards. This disparity undermines any equitable balance within the contractual relationship.

67. As a direct and proximate result of these unconscionable provisions, Plaintiff was left without adequate recourse after suffering severe physical injuries, emotional distress, and

COMPLAINT FOR DAMAGES

**Exhibit B-22**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

economic losses during an assignment arranged through Rover's platform. Plaintiff's injuries include deep puncture wounds, torn ligaments, and permanent mobility loss in his hand, as well as the aggravation of a pre-existing foot fracture. Plaintiff also experienced significant financial harm, including medical expenses, lost income, and diminished earning capacity.

68. Plaintiff seeks a declaration from this Court that the limitation of liability, disclaimers of warranties, indemnification clause, and other provisions within Rover's Terms are unconscionable and unenforceable. This declaration is necessary to ensure that Plaintiff and other similarly situated service providers are not unfairly denied access to remedies for harm caused by Rover's systemic failures.

**SEVENTH CAUSE OF ACTION**

**DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) AND THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (FEHA), AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against Rover.com)**

69. The Plaintiff Jeremy Cotter realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

70. Under Title III of the ADA, codified at 42 U.S.C. § 12182, entities offering public accommodations must ensure that individuals with disabilities have equal access to the services and benefits they provide. While traditionally focused on physical spaces, courts have increasingly applied the ADA to online platforms that act as service providers. In *Robles v. Domino's Pizza, LLC,* 913 F.3d 898 (9th Cir. 2019), the Ninth Circuit held that

-23-

**COMPLAINT FOR DAMAGES**

**Exhibit B-23**

online services must be accessible to individuals with disabilities under Title III of the ADA when they have a sufficient nexus to goods and services provided.

71. Rover's platform, by connecting pet owners with service providers, qualifies as a public accommodation under the ADA. Plaintiff, as a service provider who developed a disability as a direct result of his work facilitated by Rover, was entitled to accommodations to ensure continued participation in services offered through Rover's platform. Plaintiff's disability, substantially limiting major life activities, placed Rover under an obligation to make reasonable accommodations. Despite Plaintiff's requests, Rover failed to engage in the interactive process required by the ADA or provide any accommodation, thereby excluding Plaintiff from equal access to its platform and services.

72. Under *California Government Code § 12940(a),* the FEHA prohibits employment discrimination based on physical or mental disability and mandates reasonable accommodations for individuals with disabilities. The definition of "employer" under FEHA includes entities that control the terms and conditions of work, even for independent contractors under certain circumstances.

73. In *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), the California Supreme Court emphasized the importance of employment-like relationships in determining employer obligations. Rover exercises significant control over the terms and conditions of work for its service providers, including Plaintiff, through its detailed Terms of Service.

74. Plaintiff's disability, incurred while providing services arranged through Rover, was known to Rover, and yet Rover failed to provide reasonable accommodations or engage

COMPLAINT FOR DAMAGES

**Exhibit B-24**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

in a good-faith interactive process, as required under FEHA. This failure constitutes a violation of Plaintiff's rights under California law.

75. Defendant's conduct, in failing to accommodate Plaintiff's disability and disregarding his requests for assistance, was extreme and outrageous. Defendant knowingly placed Plaintiff in a vulnerable position by denying access to accommodations and failing to address the conditions that exacerbated his emotional and physical suffering. Under California law, intentional infliction of emotional distress occurs where a defendant's conduct is outrageous, intentional, or reckless, and causes severe emotional harm. In *Hughes v. Pair,* 46 Cal. 4th 1035 (2009), the California Supreme Court reaffirmed that such claims require conduct exceeding all bounds of decency.

76. As a direct and proximate result of Rover's actions and omissions, Plaintiff suffered significant emotional distress, including anxiety, depression, and humiliation. These emotional injuries have manifested in physical symptoms, adversely affecting Plaintiff's personal and professional life.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants Jacqueline Lambert and A Place for Rover, Inc., and enter judgment as follows:

1. Award Plaintiff compensatory damages for all past and future medical expenses incurred as a result of the injuries sustained, including damages for lost wages, diminished earning capacity, physical pain, suffering, permanent disability, emotional distress, anxiety, trauma, and the significant reduction in Plaintiff's quality of life caused by the Defendants' actions and omissions.

-25-

**Exhibit B-25**

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

2. Award Plaintiff punitive damages in an amount sufficient to punish Defendants for their willful, malicious, and egregious conduct and to deter similar behavior in the future, and award statutory damages pursuant to California Civil Code § 3342, holding Defendant Jacqueline Lambert strictly liable for the injuries caused by her dog.

3. Declare the Terms of Service imposed by Defendant A Place for Rover, Inc., to be unconscionable and unenforceable, specifically including provisions limiting liability, disclaiming warranties, and imposing indemnification obligations on service providers.

4. Order Defendant A Place for Rover, Inc., to implement and enforce adequate safety protocols, including comprehensive and independent vetting of pets listed on its platform, transparent disclosure of risks associated with specific pets, comprehensive insurance coverage for service providers, compliance with the Americans with Disabilities Act (ADA) and the California Fair Employment and Housing Act (FEHA), and the establishment of adequate incident response protocols to provide meaningful support to service providers injured while performing assignments arranged through the platform.

5. Award Plaintiff all reasonable costs of litigation incurred, including attorneys' fees and expenses as provided under *42 U.S.C. § 12205 (ADA)* and California Government Code § 12965(b) (FEHA), and costs pursuant to *California Civil Code §§ 1717, 1788.30(b), and 1788.30(c).*

6. Award Plaintiff pre-judgment and post-judgment interest on all damages awarded, as permitted by law, from the date of injury through the date of judgment and thereafter.

7. Grant such other and further relief as the Court deems just, proper, and equitable under the circumstances.

COMPLAINT FOR DAMAGES

Exhibit B-26

Docusign Envelope ID: FC6E5DA6-EF61-4DD0-8F42-1EACBF90E1A9

Dated: 3rd December 2024                                    By:

JEREMY COTTER.

PLAINTIFF, In Pro Per

-27-

**COMPLAINT FOR DAMAGES**

**Exhibit B-27**

**VERIFICATION**

I, JEREMY COTTER, declare as follows:

1. I am the Plaintiff in the above-entitled action.

2. I have personally read the foregoing complaint and am fully acquainted with its contents. The statements contained therein are true to my own knowledge, except for those matters stated upon information and belief. As to those matters, I believe them to be true based on the information provided to me.

3. I declare under penalty of perjury pursuant to the laws of the State of California that the above statements are true and correct.

4. This verification was executed in Playa Vista, State of California.

Dated: 3rd December 2024                      By:

                                                                    Signed by:

                                                                    Jeremy Cotter
                                                                    DAC952C4043E4B0...

                                                          JEREMY COTTER.

                                                          PLAINTIFF, In Pro Per

-28-

COMPLAINT FOR DAMAGES

**Exhibit B-28**

### EXHIBIT A – PHOTOGRAPHIC EVIDENCE OF PLAINTIFF'S INJURIES



Page 1 of 5

**Exhibit B-29**

**EXHIBIT A – PHOTOGRAPHIC EVIDENCE OF PLAINTIFF'S INJURIES**



Page **2** of **5**

**Exhibit B-30**

**EXHIBIT A – PHOTOGRAPHIC EVIDENCE OF PLAINTIFF'S INJURIES**



Page **3** of **5**

**Exhibit B-31**

**EXHIBIT A – PHOTOGRAPHIC EVIDENCE OF PLAINTIFF'S INJURIES**



Page **4** of **5**

**Exhibit B-32**

**EXHIBIT A – PHOTOGRAPHIC EVIDENCE OF PLAINTIFF'S INJURIES**



Page **5** of **5**

**Exhibit B-33**

### NATIONAL REGISTERED AGENTS, INC
### *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: Angelique Marchion
Rover Group
720 OLIVE WAY STE 1900
SEATTLE, WA 98101-1847

SOP Transmittal #  **548216876**

Entity Served:   A PLACE FOR ROVER, INC.  (Domestic State: DELAWARE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate in the State of WASHINGTON on this 21 day of January, 2025. The following is a summary of the document(s) received:

1. **Title of Action:**  Re: JEREMY COTTER // To: A PLACE FOR ROVER, INC.

2. **Document(s) Served:**   Other: --

3. **Court of Jurisdiction/Case Number:** None Specified
Case # 24STCV33232

4. **Amount Claimed, if any:**  N/A

5. **Method of Service:**   Process Server

6. **Date and Time of Receipt:**   01/21/2025 11:44:00 AM CST

7. **Appearance/Answer Date:**  None Specified

8. **Received From:**    None Specified

9. **Carrier Airbill #**

10. **Call Made to:** Not required

11. **Special Comments:**
NRAI will retain the current log

Image SOP

Email Notification,  Angelique Marchion  angelique.marchion@rover.com

**Registered Agent: NATIONAL REGISTERED AGENTS, INC**          CopiesTo:

866-539-8692 - Telephone

The information contained in this Summary Transmittal Form is provided by NRAI for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. NRAI disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

ORIGINAL

**Exhibit C-1**



## PROCESS SERVER DELIVERY DETAILS

**Date:**                          Tue, Jan 21, 2025
**Server Name:**                   Drop Service

| Entity Served | A PLACE FOR ROVER, INC. |
|---|---|
| Case Number | 24STCV33232 |
| Jurisdiction | WA |

| Inserts |
|---|
|  |



114432

**Exhibit C-2**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/17/2024 8:11 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Jacqueline Lambert and A place for Rover, Inc., dba Rover.com, a Delaware Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Jeremy Cotter

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

**CASE NUMBER:**
*(Número del Caso):*

24STCV33232

Stanley Mosk Court House 111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Jeremy Cotter                                                6400 Crescent Park E # 404, Playa Vista, CA 90094

DATE: 12/17/2024          Clerk, by   David W. Slayton, Executive Officer/Clerk of Court , Deputy
*(Fecha)*                      *(Secretario)*          S. Ruiz   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]   **NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
   A PLACE FOR ROVER, INC., DBA ROVER.COM, a Delaware
3. ☒ on behalf of *(specify):*  Corporation
   under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]   [ Clear this form ]

**Exhibit C-3**

Docusign Envelope ID: DBB28C15-A178-40FF-B33A-C5F3708A0B45

|  | CM-010 |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Jeremy Cotter<br>6400 Crescent Park E, #404, Playa Vista, CA 90094<br><br>TELEPHONE NO.: 650-918-6034          FAX NO.: n/a<br>EMAIL ADDRESS:<br>ATTORNEY FOR *(Name):* n/a | **FOR COURT USE ONLY**<br><br>**Electronically FILED by**<br>**Superior Court of California,**<br>**County of Los Angeles**<br>**12/17/2024 8:11 AM**<br>**David W. Slayton,**<br>**Executive Officer/Clerk of Court,**<br>**By S. Ruiz, Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los angeles, CA 90012
BRANCH NAME: Los angeles, CA 90012

CASE NAME:
Cotter v. Lambert et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER:<br>24STCV33232 |
|---|---|---|
| [x] Unlimited    [ ] Limited<br>(Amount        (Amount<br>demanded     demanded is<br>exceeds $35,000)   $35,000 or less) | [ ] Counter    [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [x] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* 7 strict liability, negligence, intentional misrepresentation, fraudulent misrepresentation, IIED, Unconscionability of contract terms, ADA violation
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4.12.2024

Jeremy Cotter
_____          *Jeremy Cotter*
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

<span style="color:red">**Exhibit C-4**</span>

Docusign Envelope ID: DBB28C15-A178-40FF-B33A-C5F3708A0B45

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                              **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
     Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
     Physicians & Surgeons
   Other Professional Health Care
     Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
     and fall)
   Intentional Bodily Injury/PD/WD
     (e.g., assault, vandalism)
   Intentional Infliction of
     Emotional Distress
   Negligent Infliction of
     Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
     *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
     Contract *(not unlawful detainer
     or wrongful eviction)*
   Contract/Warranty Breach–Seller
     Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
     Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
     Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner
     Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic
   relations)*
   Sister State Judgment
   Administrative Agency Award
     *(not unpaid taxes)*
   Petition/Certification of Entry of
     Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
     harassment)*
   Mechanics Lien
   Other Commercial Complaint
     Case *(non-tort/non-complex)*
   Other Civil Complaint
     *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                         Page 2 of 2

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    | Print this form |  | Save this form |          | Clear this form |

**Exhibit C-5**

Docusign Envelope ID: DA0D6C52-9464-4EEC-A73A-8F8E06B2012F

| SHORT TITLE<br>Cotter v. Lambert et al. | CASE NUMBER<br>24STCV33232 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.  Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.  Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.  Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.  Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☑ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

## Exhibit C-6

Docusign Envelope ID: DA0D6C52-9464-4EEC-A73A-8F8E06B2012F

| SHORT TITLE<br>Cotter v. Lambert et al. | | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**Exhibit C-7**

Docusign Envelope ID: DA0D6C52-9464-4EEC-A73A-8F8E06B2012F

| SHORT TITLE Cotter v. Lambert et al. | | CASE NUMBER |
|---|---|---|

| | A Civil Case Cover Sheet Case Type | B Type of Action (check only one) | C Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation           Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23          **CIVIL CASE COVER SHEET ADDENDUM**          LASC Local Rule 2.3

For Mandatory Use                **AND STATEMENT OF LOCATION**

**Exhibit C-8**

Docusign Envelope ID: DA0D6C52-9464-4EEC-A73A-8F8E06B2012F

| SHORT TITLE | CASE NUMBER |
|---|---|
| Cotter v. Lambert et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 01/23                **CIVIL CASE COVER SHEET ADDENDUM**                LASC Local Rule 2.3
For Mandatory Use                         **AND STATEMENT OF LOCATION**

**Exhibit C-9**

Docusign Envelope ID: DA0D6C52-9464-4EEC-A73A-8F8E06B2012F

| SHORT TITLE<br>Cotter v. Lambert et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☐ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 900 12 | 555 W. Temple St., Los Angeles, CA 90012 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 12/04/2024

Signed by:
*Jeremy Cotter*

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND ...... . TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23          CIVIL CASE COVER SHEET ADDENDUM          LASC Local Rule 2.3
For Mandatory Use                    AND STATEMENT OF LOCATION

**Exhibit C-10**



# Terms of Service

*Effective: Oct 27, 2020*

**1. Acceptance of Terms; Modifications.**

These Terms of Service (the "**Terms**") are a binding legal agreement between you and A Place for Rover, Inc., a company incorporated under the laws of Delaware with a registered office at 711 Capitol Way S., Suite 204, Olympia, WA 98501 ("**Rover**," "**we**," "**us**" and "**our**"). The Terms govern your use of our software applications, resources and services for pet owners and pet service providers to find each other, communicate with each other, and arrange for the provision of pet care services (collectively, our "**Rover Service**"). The Terms govern all use of the Rover Service, whether you access it from our website at https://www.rover.com (or any localized version) (the "**Site**"), our mobile applications and mobile websites, our Facebook application, our online or phone support offerings, or any other access point we make available to you. Our Rover Guarantee Terms (/terms/guarantee/), Reservation Protection Policy (/terms/reservation-protection/) and other Policies applicable to your use of the Rover Service are incorporated by reference into these Terms of Service. BY AGREEING TO THESE TERMS DURING THE ACCOUNT SIGN-UP PROCESS OR ACCESSING OR USING THE ROVER SERVICE WITHOUT AN ACCOUNT, YOU ACCEPT THESE TERMS. IF YOU DO NOT AGREE WITH THESE TERMS, YOU SHOULD NOT ACCEPT THEM, IN WHICH CASE YOU DO NOT HAVE THE RIGHT TO USE THE ROVER SERVICE.

You understand and agree that we may change the Terms from time to time, and that any such changes will be effective (except as otherwise described in Section 17.10 below) when we post the modified Terms on the Rover Service, unless otherwise required by applicable law. Your continued access and use of the Rover Service after we post the modified Terms will constitute your consent to be bound by the modified Terms.

**2. Rover Service.**

2.1 Nature of the Rover Service. The Rover Service consists of a desktop Web application, mobile applications, and other related tools, support and services that pet owners ("**Pet Owners**") and providers of pet-related services ("**Service Providers**") can use to find, communicate and interact with each other. The Rover Service includes our emergency support services, educational materials for Service Providers, and other services. We charge fees for some aspects of the Rover Service, as described below in Section 9.

2.2 Rover does not provide Pet Care Services.. Rover is a neutral venue for Service Providers and Pet Owners. Rover is not a Service Provider and, except for emergency phone support and other resources and support specifically described in the Rover Service, does not provide pet care services. We make no representations or warranties about the quality of boarding, pet sitting, dog walking, house sitting, or other services provided by Service Providers ("**Pet Care Services**"), or about your interactions and dealings with users. Service Providers listed on Rover are not under the direction or control of Rover, and Service Providers determine in their own discretion how to provide Pet Care Services. Though we provide general guidance on our Site to Service Providers about safety and pet care and to Pet Owners about selecting and engaging Service Providers, Rover does not employ, recommend or endorse Service Providers or Pet Owners, and, to the maximum extent

**Exhibit D-1**

permitted by applicable law, we will not be responsible or liable for the performance or conduct of Service Providers or Pet Owners, whether online or offline. We conduct an initial review of Service Provider profiles and we facilitate Background Checks or Identification Verifications (each as described in Section 10, below) on Service Providers conducted by a third party, but, except where explicitly specified in the Rover Service (and then only to the extent specified), do not otherwise screen Service Providers or Pet Owners. You should exercise caution and use your independent judgment before engaging a Service Provider, providing Pet Care Services, or otherwise interacting with users via the Rover Service. Pet Owners and Service Providers are solely responsible for making decisions that are in the best interests of themselves and their pets. For example, each user of the Rover Service is responsible for keeping current his or her own pet's vaccinations, and we will have no liability for anyone's failure to vaccinate his or her pet.

2.3 Release. **Subject to Section 16 below, Rover has no liability for any claims, injuries, loss, harm and/or damages arising from and/or in any way related to your interactions or dealings with other users and the acts and/or omissions of Service Providers and Pet Owners, whether online or offline. You acknowledge and agree that, to the maximum extent permitted by the applicable law, YOUR USE AND/OR PROVISION OF PET CARE SERVICES IS AT YOUR SOLE AND EXCLUSIVE RISK. (Any financial obligations Rover may have to its users in connection with user conduct are limited to the reimbursement obligations set forth in the Rover Guarantee.)**

2.4 Transactions are between Pet Owners and Service Providers. The Rover Service may be used to find and offer Pet Care Services and to facilitate payment, but all transactions conducted via the Rover Service are between Pet Owners and Service Providers. Except for the limited refunds and "Reservation Protection" specified in Section 9.6 and the Rover Guarantee, you agree that Rover has no liability for damages associated with Pet Care Services (which may include bodily injury to, or death of, a pet) or resulting from any other transactions between users of the Rover Service.

2.5 Bookings. Pet Owners and Service Providers transact with each other on the Rover Service when they both agree to a "booking" that specifies the fees, time period, cancellation policy, and other terms for provision of Pet Care Services via the booking mechanism provided on the Rover Service (a "Booking"). A Booking may be initiated by either a Service Provider or a Pet Owner by selecting the type(s) of Pet Care Services to be provided and then following the prompts that appear on–screen. If you are a Pet Owner and you initiate a Booking, you agree to pay for the Pet Care Services described in the Booking when you click "Request & Pay." If you are a Pet Owner and a Service Provider initiates a Booking, you agree to pay for the Pet Care Services described in the Booking when you click "Pay Now." All requests are subject to acceptance by the receiving party. The receiving party is not obligated to accept your (or any) request and may, at their discretion, decline for any reason. You acknowledge that, once you complete a Booking, you agree to honor the price and other terms of that Booking, as acknowledged in the Booking confirmation.

2.6 Pet Owners are Solely Responsible for Evaluating Service Providers. Pet Owners are solely responsible for evaluating the suitability of Service Providers for the services they offer to provide. Please visit the Help Center (https://support.rover.com/hc/en–us/) for guidance about making informed decisions about engaging Service Providers. Though Rover performs a limited review of Service Provider profiles and facilitates Service Provider Background Checks or Identity Verifications conducted by a third party, any such screening is limited, and Rover does not warrant that any such screen is accurate, complete, conclusive or up–to–date. Similarly, Rover does not endorse reviews of Service Providers by other Pet Owners that may be available via the Rover Service, and Rover makes no commitments that such reviews are accurate or legitimate.

**Exhibit D-2**

<u>2.7 Abandoned Pets; Re–homing</u>. Pet Owners who arrange for Pet Care Services and fail to retrieve their pet after the service period identified in a Booking agree that Rover (or the Service Provider) may, in its (or his or her) sole discretion, place the pet in foster care, transfer care to animal control or other law enforcement authorities, or find other alternate care. Pet Owner agrees to reimburse Rover and/or the Service Provider for all costs and expenses associated with such actions. Further, Rover expressly reserves the right, in its sole discretion, to remove a Pet Owner's pet from a Service Provider's care should Rover deem it necessary for the safety of a pet, the Service Provider, or any persons living with the Service Provider. Prior to removing a pet from the care of a Service Provider, Rover will use reasonable efforts during its normal business hours to contact the Pet Owner and/or the Pet Owner's emergency contact (if provided) to arrange alternative care. Should Rover not be able to contact the Pet Owner or the emergency contact, Rover will use its best judgment to find alternative care for the pet until the Pet Owner is able to retrieve his/her pet. If you are a Pet Owner, you authorize your pet's veterinarian(s) to release your pet's veterinary records to Rover in connection with any such relocation or re–homing of your pet. In addition, you are responsible for and agree to pay all costs and expenses incurred by Rover in connection with such transfer.

<u>2.8 Emergencies</u>. We recommend that Pet Owners give their Service Providers contact information where they can be reached in the event medical care for a pet becomes necessary. Service Providers agree to immediately contact Pet Owners in the event such care becomes necessary or, if the Pet Owner is not available, to contact Rover at the applicable telephone number or email address listed in the table at the end of these Terms. If you are a Pet Owner, you hereby authorize your Service Provider and Rover to obtain and authorize the provision of veterinary care for your pet if you cannot be reached to authorize care yourself in an emergency situation. In such case, you also authorize your pet's veterinarian(s) to release your pet's veterinary records to Rover. If your Service Provider reaches you with a request to authorize medical care for your pet and you refuse, you release the Service Provider and Rover for any injury, damage or liability arising from failure to seek such care, including from reimbursement that may otherwise have been available under the Rover Guarantee. Pet Owners are responsible for the costs of any such medical treatment for pets and, if you are a Pet Owner, you hereby authorize Rover to charge your credit card or other payment method for such costs. In certain circumstances, a Pet Owner may be eligible for reimbursement under the Rover Guarantee. Rover recommends that all users have adequate pet insurance to cover the costs of veterinary care.

<u>2.9 Consultation Services</u>. Rover may offer Pet Owners and Service Providers phone, chat, or email veterinary consultation services from a third party to provide an educational resource for decisions you make about your own pets or pets in your care. These consultation services are provided by a third party, and are not a part of the Rover Service. If you use these third party consultation services, you should use them only in conjunction with, and not as a substitute for, professional veterinary care. You agree to resort solely to the applicable third party consultation service in the event of any claims arising from their services.

<u>2.10 Google Maps</u>. Use of the Rover Service requires use of Google Maps features and content, which are subject to the current (1) Google Maps/Google Earth Additional Terms of Service at https://maps.google.com/help/terms_maps.html (including the Acceptable Use Policy at https://cloud.google.com/maps–platform/terms/aup/); and (2) Google Privacy Policy at https://www.google.com/policies/privacy/ (collectively, the "Google Terms"). By using the Rover Service, you acknowledge and agree to the Google Terms as they apply to you (e.g., as an "End User"). Any unauthorized use of the Google Maps features and content may result in your suspension or termination from the Rover Service.

**Exhibit D-3**

## 3. Certification of Compliance with Applicable Law.

By accessing and using the Rover Service, you certify that you: (1) are at least 18 years of age or the age of majority in your jurisdiction, whichever is higher, and (2) will comply with all laws and regulations applicable to your activities conducted through, or related to, the Rover Service.

- For Pet Owners, this means, among other things, that you will ensure that your pets are vaccinated, licensed, identification–tagged and/or microchipped as required by local laws or regulations; that you have obtained and will maintain any mandatory insurance policies concerning the pets whose care you entrust to Service Providers (and that such policies will benefit third parties, including Service Providers, to the same extent they benefit you).
- For Service Providers, this means, among other things, that you certify that you are legally eligible to provide Pet Care Services in the jurisdiction where you provide Pet Care Services; that you have complied and will comply with all laws and regulations that are applicable to you; that you have obtained all business licenses, business tax registrations, and permits necessary to legally provide Pet Care Services; and that, when providing Pet Care Services, you will comply with applicable leash, pet waste disposal, and similar laws.

You acknowledge that Rover is entitled to rely on these certifications from you, is not responsible to ensure that all users have complied with applicable laws and regulations, and will not be liable for a user's failure to do so.

## 4. Use of the Rover Service; Suspension.

4.1 Your Conduct on the Rover Service. When you use the Rover Service, you agree:

- To use the Rover Service only in a lawful manner and only for its intended purposes.
- Not to use the Rover Service to arrange for the care of: (a) exotic or inherently dangerous pets such as venomous snakes or constrictors, primates, wolves or wolf hybrids, non–domesticated cats, alligators, horses or other livestock; (b) any animal whose ownership or third–party care is prohibited under applicable law; or (c) any animal that has a history of, or which has been trained for, attacks on pets or people.
- Not to submit viruses or other malicious code to or through the Rover Service.
- Not to use the Rover Service, or engage with other users of the Rover Service, for purposes that violate the law.
- Not to use the Rover Service to arrange for the provision and purchase of services with another user, then complete transactions for those services outside of the Rover Service.
- Not to use the Rover Service for purposes of competing with Rover or to promote other products or services.
- Not to post reviews about Service Providers that aren't based on your personal experience, that are intentionally inaccurate or misleading, or that violate these Terms.
- Not to post content or materials that are pornographic, threatening, harassing, abusive, or defamatory, or that contain nudity or graphic violence, incite violence, violate intellectual property rights, or violate the law or the legal rights (for example, privacy rights) of others.
- Not to post "spam" or other unauthorized commercial communications.
- To use the Rover Service only for your own purposes, and not to impersonate any other person.

**Exhibit D-4**

- Not to transfer or authorize the use of your account for the Rover Service by any other person, or to engage in fraudulent transactions.
- Not to provide false information in your profile on, or registration for, the Rover Service, or to create multiple or duplicate accounts.
- Not to interfere with our provision of, or any other user's use of, the Rover Service.
- Not to solicit another user's username and password for the Rover Service or any other sensitive personal information, including bank details.

4.2 Suspension and Termination. You understand and agree that we have no obligation to provide the Rover Service in any specific location or territory, nor to continue providing it once we have begun. We reserve the right to suspend or terminate your access to the Rover Service: (1) if in our discretion your conduct on the Site or Rover Service is inappropriate, unsafe, dishonest, or in breach of these terms; or (2) if necessary in our discretion to protect Rover, its users, pets, or the public. You may suspend or terminate your use of the Rover Service at any time and for any reason. If you wish to deactivate your account, please contact Rover. Note that if you have any outstanding payment obligations, those will survive suspension or termination of your account.

## 5. Registration; Account Security.

In order to use some aspects of the Rover Service, you will be required to create a username, password, and user profile. If you elect to use the Rover Service, you agree to provide accurate information about yourself and keep this information up–to–date. You agree not to impersonate anyone else and not to maintain more than one account (or, if Rover suspends or terminates your account, not to create additional accounts). You are responsible for maintaining the confidentiality of your username and password for the Rover Service and are responsible for all activity under your account. You agree to notify us promptly of any unauthorized use of your account.

## 6. Privacy.

Our collection and use of your personal information on the Rover Service is described in our Privacy Statement. By accessing or using the Rover Service, you acknowledge that you have read and understand the Privacy Statement (/terms/privacy/).

## 7. Your Content.

7.1 Your Content. We may require or allow you (or someone else on your behalf) to submit or upload text, photographs, images, videos, reviews, information and materials to your profile on the Rover Service or otherwise in connection with using the Rover Service and/or participating in promotional campaigns we conduct on the Site (collectively, "**Your Content**"). For example, Service Providers are invited to create a profile page with a photograph and other information and to transmit photos of the dogs under their care to Pet Owners, while Pet Owners may submit reviews of Service Providers.

7.2 License. Except for the limitations on our use and disclosure of personal information described in our Privacy Statement, to the maximum extent and duration permitted under any applicable law, you grant Rover an irrevocable, perpetual, non–exclusive, fully paid worldwide license to use, copy, perform, publicly display, reproduce, adapt, modify, transmit, broadcast, prepare derivative works of, and/or distribute Your Content in connection with providing and/or promoting the Rover Service, and to sublicense these rights to third parties.

**Exhibit D-5**

7.3 Release. If your name, voice, image, persona, likeness, or performance is included in any of Your Content, you hereby waive, and release Rover and its users from, any claim or cause of action, whether known or unknown, for defamation, copyright infringement, invasion of the rights of privacy, publicity, or personality, or any similar claim arising out of the use of Your Content in accordance with the license in Section 7.2 and the other provisions of these Terms.

7.4 Your Representations and Warranties about Your Content. You represent and warrant that (1) you are the owner or licensor of Your Content, and that you have all rights, consents and permissions necessary to grant the license in Section 7.2 and make the release in Section 7.3 with respect to Your Content, (2) that you have any necessary consents and releases from individuals who appear or whose pets appear in Your Content; and (3) Your Content does not violate the law or these Terms.

7.5 Right to Remove or Screen Your Content. Though we are not obligated to do so, we reserve the right to monitor, screen, edit and/or remove Your Content on the Rover Service. Our enforcement of these Terms with respect to Your Content is at our discretion, and failure to enforce the Terms in one instance does not create a waiver of our right to enforce them in another instance. We have no obligation to retain or provide you with copies of Your Content, nor will we have any liability to you for any deletion, disclosure, loss or modification to Your Content. It is your sole responsibility to maintain backup copies of Your Content.

7.6 Reviews. The Rover Service may provide the ability to leave public and/or private reviews of users or their pets. You acknowledge that even private reviews may be shared with third parties in accordance with applicable law and our Privacy Statement and that Rover has no obligation to preserve or indefinitely store any reviews. If you are a Service Provider, we have no obligation to provide you with the content of any reviews about you submitted by other users of the Rover Service, whether before or after termination of your account for the Rover Service. We will have no liability to you for any deletion, disclosure, loss or modification of these reviews. We reserve the right to screen, edit or remove these reviews from the Rover Service at any time.

## 8. Phone, Text and Mobile Communications.

8.1 Consent to Autodialed Text Messages This section 8.1 applies only to users in the United States. You consent to Rover communicating with you about the Rover Service by SMS, text message, email and other electronic means, including autodialed text messages containing service information and/or marketing messages, even if your phone number is on the do–not–call list. Your carrier's normal messaging, data and other rates and fees will apply to these communications. You are not required to provide this consent to receive marketing messages as a condition of purchasing anything or using the Rover Service, and you may opt–out of receiving these messages at any time as described in our Privacy Statement (though you may continue to receive messages while Rover processes your request).

8.2 Phone Number Changes. In the event you deactivate a mobile phone number provided to us, you agree to update your Rover account information promptly to ensure that messages are not sent to the person who acquires your old number.

## 9. Fees & Payment.

9.1 Currency. All fees, deductible amounts and other payments referenced on, or charged through, the Rover Service are listed and payable in local currency.

**Exhibit D-6**

9.2 Fees for Pet Owners. Pet Owners may purchase Pet Care Services from a Service Provider by completing a Booking as described in Section 2.5. If you are a Pet Owner, you enter into a transaction with the Service Provider when you accept a Booking, and you agree to pay the total fees indicated in the Booking. As described in Sections 9.3 and 9.4, the total amount Pet Owners are charged for a Booking may also include a service fee payable to Rover. Where required by law, the amount charged will also be inclusive of applicable taxes. The Service Provider, not Rover, is responsible for performing the Pet Care Services.

9.3 Fees for Service Providers. Service Providers may agree to provide Pet Care Services to a Pet Owner by agreeing to a Booking as described in Section 2.5. If you are a Service Provider, you must confirm the Booking before it expires or the Pet Owner will have no obligation to complete the transaction. Once the Booking is completed by both parties, you agree to honor the price set forth in your Booking. The purchase of Pet Care Services is a transaction between the Pet Owner and the Service Provider. Rover's role is to facilitate the transaction. We will (either directly or indirectly through an authorized third party) collect payment from the Pet Owner at the time of Booking and (except to the extent of any payment hold pursuant to Section 9.7) initiate payment to the Service Provider's account 48 hours after completion of the service period indicated in the Booking. Service Providers are charged a service fee as described in Section 9.4. Where required by law, the amount charged will also be inclusive of applicable taxes.

9.4 Service Fees. We charge service fees for some aspects of the Rover Service. If you are a Service Provider, except where otherwise specified via the Rover Service, our service fee is calculated as a percentage of the fees a Pet Owner agrees to pay to you in a Booking and is collected from each Booking. Our service fees are described here (https://support.rover.com/hc/en–us/articles/205385304).

9.5 Late Fees and Additional Charges. If you are a Pet Owner, you acknowledge and agree that, if you fail to retrieve your pet at the end of the service period agreed in a Booking, you will be charged for additional service time (*pro rata* for each partial late day) at the daily rate established in the Booking. In addition, you agree to indemnify Rover from, and agree that we may charge your credit card or other payment method for, any additional costs and expenses we or the Service Provider incur as a result of your failure to retrieve your pet at the end of the service period agreed in a Booking.

9.6 Cancellations & Refunds.

- *Reservation Protection.* As more fully described on Rover's Reservation Protection (/terms/reservation–protection/) page, Rover can help you find replacement Service Providers when Service Providers cancel Bookings near the start date of the service period identified in the Booking. The availability of the Reservation Protection depends on the timing of the cancellation and the type of Pet Care Services provided; consult the Reservation Protection (/terms/reservation–protection/) page for details.
- *Cancellations by Service Provider.* If a Service Provider cancels a Booking prior to or during the service period identified in the Booking, we will refund the fees paid by the Pet Owner for Pet Care Services not provided, as well as any service charge paid to Rover. If you are a Service Provider, you can appoint a substitute Service Provider (as agreed by the Pet Owner and so long as the substitute has an active account on the Rover Service and has agreed in writing to accept a Booking) by contacting Rover to modify the Booking. If you do not find a substitute and repeatedly cancel accepted Bookings without justification, Rover may terminate your account.
- *Cancellations by Pet Owner.* If a Pet Owner cancels a Booking prior to or during the service period specified in a Booking, we will refund fees in accordance with the cancellation policy selected by the

**Exhibit D-7**

Service Provider on the Rover Service. All Service Providers are required to select a cancellation policy prior to completing a Booking so that Pet Owners are aware of the cancellation policy prior to Booking. For more information about cancellation policies, please visit the <u>Help Center</u> (<u>https://support.rover.com/hc/en-us/</u>).

- *Force Majeure.* The cancellation policies described herein may not apply in the event of certain emergency situations beyond the control of Service Providers and/or Pet Owners that make it impossible or impractical to perform agreed Bookings, such as evacuations resulting from earthquake, hurricane, wildfire, flood, war, riots or other similar disaster. In such cases Rover may, in its reasonable discretion, issue refunds under terms that vary from a Service Provider's selected cancellation policy.

- *Refunds for Failure to Perform.* If we determine in our reasonable discretion that a Service Provider has failed to provide Pet Care Services as agreed with the Pet Owner or is otherwise in breach of these Terms, then we may, in our reasonable discretion, cancel a Booking and/or issue a full or partial refund to a Pet Owner.

- *General Terms for Cancellations.* If you wish to cancel a Booking, you should use the mechanisms available through the Rover Service to do so. For purposes of the policies and terms in this Section 9.6, the date of cancellation is the date that a user cancels through the Rover Service, regardless of any separate communications between users outside of the Rover Service.

- *Payment Disputes; Payment Outside of the Rover Service.* Rover initiates payments to Service Providers 48 hours after completion of a Booking. Once these amounts have been disbursed, any further payment disputes are between the Pet Owner and Service Provider, and Rover has no obligation to mediate or facilitate any resolution. Further, Rover has no responsibility or liability with respect to any tips, bonuses, or other payments made outside of the Rover Service.

<u>9.7 Payment Holds</u>. If you are a Service Provider, Rover reserves the right to issue a hold on amounts otherwise payable to you pursuant to Section 9.3 if there is a reasonable suspicion of fraudulent activity involving your account(s) or for other similarly compelling reason involving protection of Rover, the Rover community or third party rights. We may also recommend that third party payment service providers restrict your access to funds in your account under the same circumstances.

<u>9.8 Authorization to Charge</u>. When you pay for Pet Care Services or for other services on the Rover Service, you will be required to provide us with valid, up-to-date credit card or other payment information and to maintain that payment information (or an acceptable alternative payment method) on file with your account so long as you have any outstanding, confirmed Bookings. Rover's role is to facilitate payments from Pet Owners to Service Providers as limited payment agent for the Service Provider. You authorize us to charge your credit card or other payment method for fees you incur on the Rover Service as they become due and payable, and to charge any alternative payment method Rover has on record for you in the event your primary payment method is expired, invalid, or otherwise not able to be charged. You are responsible for maintaining up-to-date payment information. If we cannot charge you for fees when due because your payment information is no longer valid, or if we do not receive your payment when due, then you understand that neither Rover nor the Service Provider will be responsible for any failure to provide services associated with those fees. Except as expressly provided in these Terms, all fees paid via the Rover Service are non-refundable once paid.

<u>9.9 Taxes</u>. Except for taxes on Rover's income and gross receipts or where Rover is otherwise required to collect taxes, you acknowledge that you are solely responsible to pay any applicable taxes that arise as a result of your purchase, provision, or use of Pet Care Services via the Rover Service. This includes, without limitation, any form

**Exhibit D-8**

of sales tax, VAT, or income tax on fees paid or received by you through the Rover Service.

9.10 Payment Processing. Payment processing services are provided by Stripe and subject to the Stripe Services Agreement (available at https://stripe.com/us/legal (https://stripe.com/us/legal)), and, if you are receiving payments via the Rover Service, the Stripe Connected Account Agreement (available at https://stripe.com/us/connect–account/legal (https://stripe.com/us/connect–account/legal)) (collectively, the "Stripe Terms"). By using the Rover Service to receive payment, you will be asked to set up a Stripe account and accept the Stripe Terms. You authorize Rover to obtain all necessary access to, and perform all necessary activity on (including requesting refunds where appropriate), your Stripe Connected Account to facilitate payment related to Pet Care Services you purchase or provide. You further agree to provide accurate and complete information about you and your business, and authorize Rover to share it and transaction information with Stripe for the purposes of facilitating the payment processing services provided by Stripe. Rover reserves the right to switch payment processing vendors or use alternate or backup vendors in its discretion.

## 10. Background Checks and Identity Verifications.

Rover may provide Service Providers with access to third party consumer reporting agencies that perform, among other things, personal identification verification services ("**Identity Verification**") or criminal records checks, sex offender registry checks, motor vehicle records checks and/or identification verifications (collectively, "**Background Checks**"). Outside of the US and Canada, these services are limited to Identity Verification. We do not provide, and are not responsible or liable in any manner for, the Background Checks or Identity Verifications, and we do not endorse or make any representations or warranties regarding the reliability of such Background Checks or Identity Verifications or the accuracy, timeliness or completeness of any information in the Background Checks or Identity Verifications. We do not independently verify information in the Background Checks or Identity Verifications.

If you undergo a Background Check or Identity Verification via the Rover Service, you hereby consent to the collection, use and disclosure of the information in the Background Check or Identity Verification, and you agree to provide complete and accurate information for your Background Check or Identity Verification. You understand and agree that Rover may, in its sole discretion, review and rely on the information in the Background Check or Identity Verification in deciding whether to suspend or terminate or investigate a complaint about a Service Provider, but also that we are not obligated to do so, and are not responsible or liable in any way in the event that any information in any Background Check or Identity Verification is not accurate, timely or complete. If you are the subject of a Background Check or Identity Verification, you may contact the applicable third–party consumer reporting agency to dispute the accuracy, timeliness or completeness of such information. You agree that Rover's rights and obligations under the Arbitration Agreement inure to the benefit of the consumer reporting agency used for Background Checks or Identity Verification in respect of any claim that would be subject to the Arbitration Agreement if brought against us. Rover reserves the right to suspend or terminate your access to the Rover Service based on information in the Background Check or Identity Verification or for any other reason, or no reason, in our sole discretion.

Pet Owners remain fully responsible to evaluate and investigate their Service Providers. **Be aware of the following limitations in Background Checks: Except as otherwise expressly provided in these Terms or through the Service, Rover does not automatically run Background Checks on any Users. Background Checks may vary by type, breadth and depth. Records not available to third–party Background Check agencies will not be included in the results. Not all arrest logs and records, conviction and correction records, sex offender**

registers and motor vehicle records are available in all jurisdictions. In many jurisdictions there is a delay before arrest logs and records, conviction and correction records, sex offender registries and motor vehicle records are included in Background Checks. Juvenile records and offenses for minors may not appear in the public record and are therefore not included in the results. Dismissed cases, arrests not resulting in convictions, arrests or convictions in foreign countries and nolle prosequi (abandonment of prosecution) may not be reported. Traffic violations are not included unless a jurisdiction reports them as criminal offenses. In the jurisdictions where traffic violations are reported as criminal offenses, such traffic violations may be included in the results as misdemeanors or felonies.

## 11. Copyright Infringement.

Rover follows the procedures of the Digital Millennium Copyright Act. We will respond to claims of copyright infringement that are reported in accordance with this Section. It is our policy, in appropriate circumstances, to deactivate or terminate the access of users who repeatedly infringe or are repeatedly charged with infringing others' copyrights or other intellectual property rights.

If you believe in good faith that your copyrighted work has been infringed by content posted on the Rover Service, please provide our designated copyright agent with a written notice that includes all of the following information:

- A description of the copyrighted work you believe to have been infringed;
- A description of the URL or other location on our Site of the material you believe to be infringing;
- Your name, mailing address, telephone number and email address;
- A statement that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law;
- A statement by you, which you make under penalty of perjury, that the above information in your notice is accurate, and that you are the copyright owner or authorized to act on the copyright owner's behalf; and
- An electronic or physical signature of the person authorized to act on behalf of the copyright owner.

Our designated agent for notice of copyright infringement can be reached at:

A Place for Rover, Inc.
Attention: Copyright Notice
720 Olive Way, Suite 1900, Seattle 98101
copyright@rover.com (mailto:copyright@rover.com)

## 12. Third Party Services, Links.

The Rover Service may contain links to third party websites or resources. You acknowledge and agree that we are not responsible or liable for: (i) the availability or accuracy of such websites or resources; or (ii) the content, products, or services on or available from such websites or resources. Links to such websites or resources do not imply any endorsement of such websites or resources, or the content, products, or services available from such websites or resources. You acknowledge sole responsibility for and assume all risk arising from your use of any such websites or resources.

## 13. Indemnity.

**Exhibit D-10**

TO THE MAXIMUM EXTENT PERMITTED UNDER ANY APPLICABLE LAW AND EXCEPT AS OTHERWISE PROHIBITED BY APPLICABLE LAW, YOU AGREE TO DEFEND, INDEMNIFY AND HOLD ROVER HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, LOSSES, EXPENSES, DAMAGES AND/OR LIABILITIES, INCLUDING REASONABLE ATTORNEYS' FEES AND COURT COSTS, THAT ARE IN ANY WAY RELATED TO YOUR: (1) transactions and interactions, online or offline, with other users of the Rover Service; (2) breach of these Terms; (3) disputes with other users of the Rover Service; (4) your misstatements, misrepresentations, or violation of applicable law; (5) property damage or personal injury to third parties caused by your pet or pets in your care; (6) Your Content; or (7) your use of any Background Check or Identify Verification information in violation of any applicable law. YOU FURTHER AGREE THAT YOU WILL COOPERATE WITH US IN THE DEFENSE OF SUCH CLAIMS. WE RESERVE THE RIGHT TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER SUBJECT TO INDEMNIFICATION UNDER THIS SECTION, AND YOU WILL NOT SETTLE ANY SUCH CLAIM OR MATTER WITHOUT OUR ADVANCE WRITTEN CONSENT.

## 14. Intellectual Property.

14.1 Rover Service. Rover and its licensors retain all right, title and interest in and to the Rover Service, the technology and software used to provide it, all electronic documentation and content available through the Rover Service (other than Your Content), and all intellectual property and proprietary rights in the Rover Service and such technology, software, documentation and content. Except for your rights to access and use the Rover Service set forth in these Terms, nothing in these Terms licenses or conveys any of our intellectual property or proprietary rights to anyone, including you. You agree that we will have a perpetual right to use and incorporate into the Rover Service any feedback or suggestions for improvement that you provide to us concerning the Rover Service, without any obligation of compensation.

14.2 Rover Trademarks. Rover owns all rights in and to its trademarks, service marks, brand names and logos (the "**Rover Marks**"). If you are a Service Provider, Rover grants you, for so long as you are in good standing on the Rover Service, a limited, revocable, non–exclusive, non–transferable license to use the Rover Marks solely: (1) in the form incorporated into goods, including customizable marketing collateral (promo cards, signage etc.), made available for purchase via the Rover Store and/or (2) in any other manner specifically authorized in writing via the Rover Service. As a condition of exercising such license, you agree that (1) all goodwill associated with your use of the Rover Marks inures solely to the benefit of Rover, and (2) such license immediately terminates upon your ceasing to be a Service Provider in good standing, whether at your own option or because Rover suspends or terminates your rights to use the Rover Service.

## 15. Warranty Disclaimer for the Rover Service.

The information and materials found on the Rover Service, including text, graphics, information, links or other items, are provided "as is" and "as available." Reviews, profiles, advice, opinions, statements, offers, or other information or content made available through the Rover Service, but not directly by Rover, are those of their respective authors, who are solely responsible for such content. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ROVER DOES NOT: (1) WARRANT THE ACCURACY, ADEQUACY OR COMPLETENESS OF INFORMATION AND MATERIALS ON THE ROVER SERVICE; (2) ADOPT, ENDORSE OR ACCEPT RESPONSIBILITY FOR THE ACCURACY OR RELIABILITY OF ANY OPINION, ADVICE, OR STATEMENT MADE BY ANY PARTY OTHER THAN ROVER; (3) WARRANT THAT YOUR USE OF THE SERVICES WILL BE SECURE, FREE FROM COMPUTER VIRUSES, UNINTERRUPTED, ALWAYS AVAILABLE, ERROR–FREE OR WILL MEET YOUR

**Exhibit D-11**

REQUIREMENTS, OR THAT ANY DEFECTS IN THE ROVER SERVICE WILL BE CORRECTED. TO THE EXTENT PERMITTED BY APPLICABLE LAW, ROVER EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, WITH RESPECT TO THE ROVER SERVICE, AND SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON–INFRINGEMENT, AND ACCURACY. IN ADDITION AND WITHOUT LIMITING THE FOREGOING, WE MAKE NO REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, REGARDING THE SUITABILITY OF ANY SERVICE PROVIDER THAT OFFERS PET CARE SERVICES VIA THE ROVER SERVICE.

## 16. Limitation of Liability.

16.1 Exclusion of Certain Types of Damages. To the maximum extent permitted under applicable law, in no event will Rover be liable to you for any indirect, special, incidental, or consequential damages, or for any business losses, or loss of profit, revenue, contracts, data, goodwill or other similar losses or expenses that arise out of or relate to the use of or inability to use the Rover Service, including without limitation damages related to any information received from the Rover Service, removal of your profile information or review (or other content) from the Rover Service, any suspension or termination of your access to the Rover Service, or any failure, error, omission, interruption, defect, delay in operation or transmission of the Rover Service, even if we are aware of the possibility of any such damages, losses or expenses. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

16.2 Limit on Our Liability to You. EXCEPT WHERE PROHIBITED BY APPLICABLE LAW, IN NO EVENT WILL ROVER'S AGGREGATE LIABILITY TO YOU OR ANY THIRD PARTY IN ANY MATTER ARISING FROM OR RELATING TO THE ROVER SERVICE OR THESE TERMS EXCEED THE AMOUNTS PAID BY YOU TO ROVER (SPECIFICALLY EXCLUDING AMOUNTS PAID TO SERVICE PROVIDERS) DURING THE TWELVE (12) MONTHS PRECEDING THE EVENT THAT GAVE RISE TO LIABILITY OR, IF YOU HAVE NOT PAID ROVER FOR THE USE OF ANY SERVICES, THE AMOUNT OF $100.00 USD (OR EQUIVALENT IN LOCAL CURRENCY). (Any financial obligations Rover may have to its users in connection with user conduct are limited to the reimbursement obligations set forth in the Rover Guarantee.)

16.3 No Liability for non–Rover Actions. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL ROVER BE LIABLE FOR ANY DAMAGES WHATSOEVER, WHETHER DIRECT, INDIRECT, GENERAL, SPECIAL, COMPENSATORY, AND/OR CONSEQUENTIAL, ARISING OUT OF OR RELATING TO THE CONDUCT OF YOU OR ANYONE ELSE IN CONNECTION WITH THE ROVER SERVICE, INCLUDING WITHOUT LIMITATION, PROPERTY DAMAGE, THEFT, BODILY INJURY, DEATH, EMOTIONAL DISTRESS, AND/OR ANY OTHER DAMAGES RESULTING FROM RELIANCE ON INFORMATION OR CONTENT POSTED ON OR TRANSMITTED THROUGH THE ROVER SERVICE, OR FOR ANY INTERACTIONS WITH OTHER USERS OF THE ROVER SERVICE, WHETHER ONLINE OR OFFLINE. THIS INCLUDES ANY CLAIMS, LOSSES OR DAMAGES ARISING FROM THE CONDUCT OF USERS WHO ATTEMPT TO DEFRAUD OR HARM YOU.

IF YOU HAVE A DISPUTE WITH A SERVICE PROVIDER OR PET OWNER, YOU AGREE TO RELEASE ROVER FROM ALL CLAIMS, DEMANDS AND DAMAGES OF EVERY NATURE, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES, EXCEPT AS SPECIFICALLY SET FORTH IN THE ROVER GUARANTEE. IN NO EVENT WILL ROVER BE LIABLE FOR DIRECT OR INDIRECT CONSEQUENCES OF A PET OWNER OR SERVICE PROVIDER FAILING TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS.

**Exhibit D-12**

## 17. Arbitration Agreement.

PLEASE READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH ROVER AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US. IF YOU RESIDE WITHIN THE EUROPEAN ECONOMIC AREA, THIS SECTION APPLIES ONLY TO BUSINESS CUSTOMERS (NOT "CONSUMERS"). IF YOU ARE A CONSUMER RESIDING WITHIN THE EUROPEAN ECONOMIC AREA, PLEASE SEE SECTION 18.

17.1 Arbitration Agreement; Claims. This Section 17 is referred to as the "Arbitration Agreement" in these Terms. Unless you opt out of the Arbitration Agreement in accordance with the procedure described in Section 17.9 below, you and Rover (together, the "Parties") agree that any and all disputes or claims that arise between you and Rover relating to the Rover Service, interactions with others on the Rover Service, and/or these Terms (including any alleged breach of these Terms) (collectively, "**Claims**"), except for Excluded Claims (defined in the following sentence), will be resolved as set forth in this Arbitration Agreement. As used herein, "Excluded Claims" means (1) individual claims brought in small claims court (if your claims qualify), (2) claims arising out of or related to a violation of Section 4.1, above, (3) claims in which either party seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property (including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents), and (4) claims that, as a matter of applicable law, cannot be made subject to arbitration.

17.2 Agreement to Arbitrate. Unless you opt out of the Arbitration Agreement in accordance with the procedure described in Section 17.9 below, you agree that any and all Claims (other than Excluded Claims) will be resolved exclusively **on an individual basis through final and binding arbitration, rather than in a court,** in accordance with this Arbitration Agreement, and **your rights in connection with all Claims (other than Excluded Claims) will be determined by a neutral arbitrator, not by a judge or jury**. The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement. To the extent that the Parties' dispute involves both timely filed Excluded Claims and other Claims subject to this Agreement, the Parties agree to bifurcate and stay for the duration of the arbitration proceedings any such Excluded Claims.

17.3 Prohibition of Class and Representative Actions and Non–Individualized Relief. YOU AND ROVER AGREE THAT, UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT IN ACCORDANCE WITH SECTION 17.9 BELOW, EACH OF US MAY BRING CLAIMS (EXCEPT TO THE EXTENT THAT THE RIGHT TO BRING A CLAIM IN A PURPORTED CLASS OR REPRESENTATIVE ACTION CANNOT BE WAIVED AS A MATTER OF LAW) AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING. UNLESS BOTH YOU AND ROVER AGREE OTHERWISE (OR TO THE EXTENT THAT THE RIGHT TO BRING A CLAIM IN A PURPORTED CLASS OR REPRESENTATIVE ACTION CANNOT BE WAIVED AS A MATTER OF LAW), THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING. ALSO, THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S). ANY RELIEF AWARDED CANNOT AFFECT OTHER ROVER SERVICE USERS.

**Exhibit D-13**

<u>17.4 Pre–Arbitration Dispute Resolution</u>. Before you commence arbitration, we suggest that you contact us to explain your complaint. Our preference will always be to resolve complaints amicably and efficiently, without the need for arbitration. You may contact us via email at legal@rover.com (mailto:legal@rover.com) or by mail at A Place for Rover, Inc., Attn: Legal, 711 Capitol Way S., Suite 204, Olympia, WA 98501. If the issue is not resolved and results in arbitration, we will need to mutually select and agree upon an arbitrator and the rules and procedures to govern the arbitration.

<u>17.5 Arbitration Procedures</u>. The Parties will try in good faith to mutually select and agree upon an arbitrator and rules and procedures to govern the arbitration. If we cannot agree, then the arbitration will be conducted in English by a neutral arbitrator in accordance with your choice of the JAMS Streamlined Arbitration Rules and Procedures (the "JAMS Rules") or the Rules of the International Center for Dispute Resolution (the "ICDR Rules"), as modified by this Arbitration Agreement. The rules that apply are those in effect when arbitration is demanded by either of the Parties. The JAMS Rules are available at https://www.jamsadr.com/rules–streamlined–arbitration (https://www.jamsadr.com/rules–streamlined–arbitration), and the ICDR Rules are available at https://www.icdr.org/rules_forms_fees (https://www.icdr.org/rules_forms_fees), and both Rules are incorporated in these Terms by reference. You either acknowledge and agree that you have read and understand the Rules or waive your opportunity to read the Rules and any claim that the Rules are unfair or should not apply for any reason. If there is any inconsistency between the Rules and this Arbitration Agreement, the terms of this Arbitration Agreement will control unless the arbitrator determines that the application of the inconsistent Arbitration Agreement terms would not result in a fundamentally fair arbitration. The arbitrator must also follow the provisions of these Terms as a court would, including without limitation, the limitation of liability provisions in Section 16. Although arbitration proceedings are usually simpler and more streamlined than trials and other judicial proceedings, the arbitrator can award the same damages and relief on an individual basis that a court can award to an individual under the Terms and applicable law. The arbitrator shall submit a decision in writing, specifying the findings of fact and the conclusions of law on which the decision is based. Decisions by the arbitrator are binding and enforceable in court and may be overturned by a court only for very limited reasons.

The arbitration will be held in the county in which you reside or at another mutually agreed location. If the value of the relief sought is $10,000 USD (or equivalent in local currency) or less, you or Rover may elect to have the arbitration conducted by telephone or based solely on written submissions, which election will be binding on you and Rover subject to the arbitrator's discretion to require an in–person hearing, if the circumstances warrant. Attendance at any in–person hearing may be made by telephone by you and/or Rover, unless the arbitrator requires otherwise.

The arbitrator will decide the substance of all claims in accordance with the laws of the State of Washington (or of England and Wales if you are located outside of the United States or Canada), including recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator will not be bound by rulings in prior arbitrations involving different Rover users, but is bound by rulings in prior arbitrations involving the same Rover user to the extent required by applicable law. As limited by applicable law, these Terms and the applicable JAMS Rules, the arbitrator will have (1) the exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a Claim, including the determination of whether a Claim is arbitrable, and (2) the authority to grant any remedy that would otherwise be available in court.

**Exhibit D-14**

17.6 Costs of Arbitration. Payment of all filing, administration, and arbitrator fees (collectively, the "**Arbitration Fees**") will be shared equally by you and Rover, except where prohibited by applicable law. In addition, (1) if you demonstrate to the arbitrator that you are economically unable to pay your portion of the Arbitration Fees or if the arbitrator otherwise determines for any reason that you should not be required to pay your portion of the Arbitration Fees, Rover will pay your portion of such fees, and (2) if you demonstrate to the arbitrator that the costs of arbitration will be prohibitive as compared to the costs of litigation, Rover will pay as much of the Arbitration Fees as the arbitrator deems necessary to prevent the arbitration from being cost–prohibitive. Each party will be solely responsible for all other fees it incurs in connection with the arbitration, including without limitation, all attorney fees. In the event the arbitrator determines the claim(s) you assert in the arbitration to be frivolous, you agree to reimburse Rover for all fees associated with the arbitration paid by Rover on your behalf that you otherwise would be obligated to pay under the JAMS or ICDR Rules.

17.7 Confidentiality. All aspects of the arbitration proceeding, and any ruling, decision or award by the arbitrator, will be strictly confidential for the benefit of all parties.

17.8 Severability. If any term, clause or provision of this Section 17 is held invalid or unenforceable, it will be so held to the minimum extent required by law, and all other terms, clauses and provisions of this Section 17 will remain valid and enforceable.

17.9 Opt–Out Procedure. You can choose to reject this Arbitration Agreement by mailing us a written opt–out notice ("**Opt–Out Notice**") in accordance with the terms of this Section 17.9. The Opt–Out Notice must be postmarked no later than 30 days after the date you accept these Terms for the first time. You must mail the Opt–Out Notice to A Place for Rover, Inc., Attn: Legal, 711 Capitol Way S., Suite 204, Olympia, WA 98501. The Opt–Out Notice must state that you do not agree to the Arbitration Agreement and must include your name, address, phone number, and the email address(es) used to register for the Rover Service to which the opt–out applies. You must sign the Opt–Out Notice for it to be effective. This procedure is the only way you can opt out of the Arbitration Agreement. If you opt out of the Arbitration Agreement, the entire Arbitration Agreement will not apply with respect to you, but the remainder of these Terms will continue to apply. Opting out of this Arbitration Agreement has no effect on any previous, other, or future arbitration agreements that you may have with us. By opting out of binding arbitration, you are agreeing to resolve Claims (including Excluded Claims) in accordance with Section 18.

17.10 Future Changes to this Arbitration Agreement. Notwithstanding any provision in these Terms to the contrary, you agree that if we make any change to this Arbitration Agreement (other than a change to any notice address or website link provided herein) in the future, that change will not apply to any claim that was filed in a legal proceeding against Rover prior to the effective date of the change. Moreover, if we terminate this Arbitration Agreement by removing it from these Terms, such termination will not be effective until 30 days after the version of these Terms not containing the Arbitration Agreement is posted to the Site, and will not be effective as to any claim that was filed in a legal proceeding against Rover prior to the effective date of removal.

## 18. Governing Law and Jurisdiction.

18.1 For users in the United States and Canada, these Terms, and any dispute between you and Rover, will be governed by the laws of the State of Washington, without regard to principles of conflicts of law, except that the Federal Arbitration Act will govern the interpretation and enforcement of Section 17 (the Arbitration Agreement). Unless you and we agree otherwise, or except where prohibited by applicable law, in the event that the

**Exhibit D-15**

Arbitration Agreement is found not to apply to you or to a particular claim or dispute, you agree that any claim or dispute that arises between you and Rover must be resolved exclusively by a state or federal court located in the State of Washington. You and Rover agree to submit to the personal jurisdiction of the courts located within Seattle, Washington for the purpose of litigating all such claims or disputes.

18.2 For users in the EEA (and the United Kingdom should it no longer be part of the EEA), the laws of England shall govern these terms, except that if you live in a country outside of England but within the EEA, certain mandatory applicable laws of your country will apply for your benefit and protection in addition to or instead of certain provisions of English law. Any dispute that arises between you and Rover must be resolved by the English courts or the courts in your country if you live in the EEA outside of England.

18.3 If you are a consumer in the European Economic Area, the European Online Dispute Resolution platform http://ec.europa.eu/consumers/odr (http://ec.europa.eu/consumers/odr) provides information about alternative dispute resolution, which you may use if there is a dispute that cannot be resolved between you and the relevant party.

**19. Miscellaneous.**

Nothing in these Terms will be construed as making either party the partner, joint venturer, agent, legal representative, employer, worker, or employee of the other. Neither party will have, or hold itself out to any third party as having, any authority to make any statements, representations or commitments of any kind, or to take any action, that will be binding on the other, except as provided for herein or authorized in writing by the party to be bound. These Terms are non–exclusive and do not prohibit Service Providers from offering pet care services via other means or third parties. The invalidity, illegality or unenforceability of any term or provision of these Terms will in no way effect the validity, legality or enforceability of any other term or provision of these Terms. In the event a term or provision is determined to be invalid or unenforceable, the parties agree to replace such term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and these Terms will be enforceable as so modified. To the maximum extent possible under applicable local law, this Agreement will be binding on and will inure to the benefit of the legal representatives, successors and assigns of the parties hereto.

For questions or concerns about the Rover Service or these Terms, please refer to the Rover Help Center (https://support.rover.com/hc/en–us/), or contact your local office:

| Location | Telephone (toll–free) | Email / Online Assistance |
|---|---|---|
| Canada | 438–799–5595 | Please contact us through our Help Center (https://support.rover.com/) |
| France | +33 805 11 87 47 | aide–fr@rover.com (mailto:aide–fr@rover.com) |
| Germany | +49 (0)3 05 68 37 201 | hilfe–de@rover.com (mailto:hilfe–de@rover.com) |
| Italy | +39 800 729 030 | aiuto–it@rover.com (mailto:aiuto–it@rover.com) |

**Exhibit D-16**

| Location | Telephone (toll-free) | Email / Online Assistance |
|---|---|---|
| Netherlands | +31 20 262 2332 | hulp–nl@rover.com (mailto:hulp–nl@rover.com) |
| Norway | +47 800 69 377 | hjelp–no@rover.com (mailto:hjelp–no@rover.com) |
| Spain | +34 910 78 07 83 | ayuda–es@rover.com (mailto:ayuda–es@rover.com) |
| Sweden | +46 8 580 970 94 | hjalp–se@rover.com (mailto:hjalp–se@rover.com) |
| United Kingdom | +44–8082–812524 | support–uk@rover.com (mailto:support–uk@rover.com) |
| United States | 888–453–7889 | Please contact us through our Help Center (https://support.rover.com/) |

## Learn More

Read Our Blog (https://www.rover.com/blog/)
Rover Q&A
Community (/community/questions/)
Rover Store (https://store.rover.com)

Rover Guarantee (/rover–guarantee/)
Safety (https://www.rover.com/blog/safety/)
Admin (/admin/)

## About Rover

About Us (/about–us/)
Contact Us (https://support.rover.com/hc/en–us/)
Accessibility (/accessibility–statement/)
Get the App (/app/)
Press (https://www.rover.com/blog/press)
Careers (/careers/)
Investor Relations (https://investors.rover.com/)

Privacy Statement (/terms/privacy/)
Cookie Policy (/terms/cookies/)
CA – Do Not Sell My Info (/terms/cookies/#ccpa)
Terms of Service (/terms/tos/)

## Get cute puppies in your inbox

Email Address    Submit

*By providing my e–mail address, I consent to receive marketing communications from Rover.com and its affiliates.*
*Privacy Policy (/terms/privacy/)*

**Exhibit D-17**

© 2023 A Place for Rover, Inc. All Rights Reserved.

711 Capitol Way S., Suite 204, Olympia, WA 98501

**Exhibit D-18**